Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued November 15, 2002      Decided June 10, 2003

No. 01-1375

CITY OF TACOMA, WASHINGTON, *ET AL.*,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

NORTHERN CALIFORNIA POWER AGENCY, *ET AL.*,
INTERVENORS

————

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

————

*Howard E. Shapiro* argued the cause for the petitioners. *Gary D. Bachman*, *Michael A. Swiger* and *Charles R. Sensiba* were on brief. *Susan A. Moore* entered an appearance.

*Frances E. Francis*, *Ben Finkelstein* and *Tracy E. Connor* were on brief for the intervenors.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Richard B. Geltman* and *Donald H. Clarke* were on brief for *amici curiae* American Public Power Association and National Hydropower Association.

*Lona T. Perry*, Attorney, Federal Energy Regulatory Commission, argued the cause for the respondent. *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor, Federal Energy Regulatory Commission, were on brief.

Before: SENTELLE and HENDERSON, *Circuit Judges,* and SILBERMAN, *Senior Circuit Judge.*

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The petitioners, a group of hydroelectric utilities licensed under the Federal Power Act (FPA or Act), 16 U.S.C. § 791a *et seq.*, seek review of three orders of the Federal Energy Regulatory Commission (Commission or FERC) that denied them refunds of annual charges that FERC imposed on them pursuant to section 10 of the FPA. The charges should be refunded, they contend, because FERC inadequately supervises the submission of cost reports by other federal agencies (OFAs) upon which the annual charges are based. They also argue that the charges should be refunded because they are based on costs beyond the scope of those recoverable under the Act.

FERC argues that the court lacks jurisdiction because the orders under review are not final. We conclude that the orders are final and we grant the petition because FERC's method of assessing the annual charges based on OFAs' FPA costs conflicts with its obligations under the Act.

I.

A.

When the Congress began to regulate the production of hydroelectric power pursuant to the Federal Water Power Act of 1920 (FWPA), it intended to pass the costs of administration on to the regulated entities. To that end, in addition to authorizing the Federal Power Commission (now FERC) to charge utilities for the use of federal lands or property, the

FWPA (now the Federal Power Act)[1] required that licensees "shall pay to the United States reasonable annual charges in an amount to be fixed by the [C]ommission for the purpose of reimbursing the United States for the costs of the administration of this Act." Federal Water Power Act of 1920, ch. 285, § 10(e), 41 Stat. 1063, 1069 (codified as amended at 16 U.S.C. § 803(e)(1)).[2] Pursuant to this statutory directive, codified in section 10(e) of the FPA, the Commission issued regulations to govern the computation and collection of the fixed charges. 18 C.F.R. pt. 11.

Until 1986, the Commission used this authority to impose charges only to reimburse the Commission for its costs incurred in administering the Act. *City of Idaho Falls*, 87 F.E.R.C. ¶ 61,114, 61,469 (1999), (*Idaho Falls I*). In that year, however, the Inspector General of the United States Department of Energy issued a report interpreting section 10(e) of the Act to authorize FERC, in imposing charges "for the purpose of reimbursing the *United States*," to impose additional charges reflecting OFAs' costs incurred in administering the Act (emphasis added).[3] That same year, the

_____

[1] In 1935, most of the FWPA became Part I of the Federal Power Act. Act of Aug. 26, 1935, ch. 687, §§ 212, 213, 49 Stat. 803, 847, 863.

[2] The Act also requires a licensee to "recompense the Government for the use, occupancy, and enjoyment of its lands or other property" and to pay charges if the licensee uses "Government dams or other structures owned by the United States." 16 U.S.C. § 803(e)(1). Thus, the Commission imposes three types of annual charges on regulated hydroelectric utilities: first, the charges at issue here, which are intended to reimburse the government for administering Part I of the Act; second, charges for the use of public land; and third, charges for the use of dams or other structures owned by the United States. *Id.*; 18 C.F.R. §§ 11.1–.4; *City of Vanceburg, Ky. v. FERC*, 571 F.2d 630, 634 (D.C. Cir. 1977).

[3] *Idaho Falls I*, 87 F.E.R.C. at 61,469 n.6 (quoting Report on Accounts Receivable, Billings and Collections of the Federal Energy Regulatory Commission, U.S. Department of Energy, Office of the Inspector General, Report No. DOE/IE–0224 (Feb. 3, 1986)); Revision of the Billing Procedures for Annual Charges for Adminis-

Congress enacted the Omnibus Budget Reconciliation Act (OBRA). Omnibus Budget Reconciliation Act, Pub. L. No. 99–509, § 3401, 100 Stat. 1874, 1890–91 (1986) (codified at 42 U.S.C. § 7178). That legislation directed that "[FERC] shall, using the provisions of this subtitle and authority provided by other laws, assess and collect fees and annual charges in any fiscal year in amounts equal to all of the costs incurred by the Commission in that fiscal year" and that the "fees or annual charges assessed shall be computed on the basis of methods that the Commission determines, by rule, to be fair and equitable." *Id.* Accordingly, FERC began to pass the additional costs on to the hydroelectric licensees. *Idaho Falls I*, 87 F.E.R.C. at 61,469. FERC has continued to assess charges for OFAs' FPA-related costs ever since.

In the early 1990s, several hydroelectric licenses were due for relicensing and FERC anticipated a heavy strain on federal and state wildlife agency budgets to complete required studies as part of the relicensing process. H.R. Rep. No. 102–474(I), at 222 (1992), *reprinted in* 1992 U.S.C.C.A.N. 1954, 2045. The Congress responded to FERC's concern by amending section 10(e)(1) as part of the 1992 Energy Policy Act (EPAct) to provide that federal and state agencies were to be reimbursed for their work. *Id.* Section 1701 of the EPAct made the costs recoverable and authorized annual appropriations to cover some of the agencies' costs.[4]

---

tering Part I of the Federal Power Act, 52 Fed. Reg. 18,201, 18,207 (May 14, 1987).

[4] Section 1701(a)(1) amended section 10(e) to read:

the licensee shall pay to the United States reasonable annual charges in an amount to be fixed by the Commission for the purpose of reimbursing the United States for the costs of the administration of this subchapter, *including any reasonable and necessary costs incurred by Federal and State fish and wildlife agencies and other natural and cultural resource agencies in connection with studies or other reviews carried out by such agencies for purposes of administering their responsibilities under this subchapter. . . .*

The Commission has established a relatively simple system to assess charges for FPA administrative costs. For each fiscal year, the Commission solicits from the eight OFAs[5] cost reports of their FPA-related administrative costs for the previous fiscal year. 18 C.F.R. § 11.1(g)(1); *City of Idaho Falls* 93 F.E.R.C. ¶ 61,145, 61,453 (2000), (*Idaho Falls II*). The Commission adds these figures to its own costs[6] and assesses the licensees according to a weighted formula that considers the type of licensee (municipal, state or other) and the kind of hydroelectric project (conventional, pure pumped storage or mixed).[7] 18 C.F.R. § 11.1(c)–(h).

Energy Policy Act of 1992, Pub. L. No. 102–486, § 1701(a), 106 Stat. 2776, 3008 (codified at 16 U.S.C. § 803(e)(1)) (amendment emphasized). Section 1701(a)(2) added this proviso:

> *Provided*, That, subject to annual appropriations acts, the portion of such annual charges imposed by the Commission under this subsection to cover the reasonable and necessary costs of such agencies shall be available to such agencies (in addition to other funds appropriated for such purposes) solely for carrying out such studies and reviews and shall remain available until expended....

*Id.*

[5] The eight agencies are the Bureau of Indian Affairs, the Bureau of Land Management, the Bureau of Reclamation, the U.S. Fish and Wildlife Service, the Army Corps of Engineers, the U.S. Forest Service, the National Oceanographic and Atmospheric Administration and the Environmental Protection Agency. *City of Idaho Falls*, 93 F.E.R.C. ¶ 61,145, 61,453 (2000). To date the EPA has not submitted reports to FERC. *Id.* at 61,453 n.6.

[6] The charges attributed to the Commission's administrative costs reflect anticipated costs for the current fiscal year. 18 C.F.R. § 11.1(g)(1). At the end of the year, the Commission compares the estimated costs with its actual costs and in the subsequent fiscal year's bill, includes a "true-up" of charges due. *Id.*

[7] Utilities that operate small conduit hydroelectric facilities and small hydroelectric projects that have more than 1.5 megawatts of installed capacity, both of which are exempt from the license requirements of the Act, 18 C.F.R. §§ 4.90–.96; 18 C.F.R.

Since the Commission began imposing charges for OFA costs, the charges have sharply increased. In FY 1992, for example, OFAs reported costs totaling $3,858,192; by FY 1999, the total rose to $14,866,849. Brief for Petitioner at 40. Contributing to the escalation has been the OFAs' expansion of costs sought to be recovered, including overhead, preparation of comments on FERC rulemakings, training and attendance at conferences—as well as costs attendant to certain OFAs' block grants to Indian tribes to oppose hydroelectric licenses, legal fees and litigation expenses. In 1997, hydroelectric licensees brought a challenge before the Commission on the OFA cost-related charges, complaining that (1) the costs were not based on substantial evidence; (2) there was no mechanism in place to review agency cost submissions to determine whether those costs are reasonable, necessary and within the scope of section 10(e)(1) of the Act; and (3) the Commission impermissibly broadened the scope of costs beyond those for the FPA "studies and reviews" specified in section 10(e)(1) of the FPA as amended by the EPAct. *Idaho Falls I*, 87 F.E.R.C. at 61,470.

## B.

The petitioners' initial challenge appealed fiscal year (FY) 1996 OFA costs included in the FY 1997 annual charges before the Commission's Chief Financial Officer (CFO). *Id.* Their objections were in the main rejected by the CFO. *Id.* FERC postponed review of the CFO's decision until an administrative law judge (ALJ) concluded his fact-finding regarding the FY 1996 OFA costs. *Id.* at 61,471. In the meantime, however, the petitioners had filed similar objections to the FY 1997 OFA costs. The Commission then consolidated the two appeals and ordered the ALJ to include in his fact-finding both the FY 1996 and FY 1997 OFA costs. *Id.* The parties opted to settle the disputed costs before the ALJ. *Idaho Falls II*, 93 F.E.R.C. at 61,452. On review, FERC declined to approve the settlement, uncertain that the

§§ 4.101–.108, also pay a share of FPA administrative costs. 18 C.F.R. § 11.1(c)–(h).

figures contained in the agreement had an adequate factual basis. *Id.* at 61,455. The Commission did, however, consider the petitioners' legal issues.

First, the Commission rejected their claim that recoverable costs under the FPA are limited to those specified in the 1992 amendment. *Id.* at 61,456. Notwithstanding the amendment's addition of the language "including any reasonable and necessary costs incurred by Federal and State fish and wildlife agencies and other natural and cultural resource agencies in connection with studies or other reviews" to section 10(e)(1), FERC concluded that recoverable costs were not limited to fish, wildlife and other natural and cultural resource agencies nor to costs related to studies and reviews. *Id.* The only effect of the amendment, the Commission said, was to broaden the scope of recoverable costs from OFAs' FPA-related administrative costs to "qualifying administrative and study costs of qualifying *state* resource agencies, whose costs had never before been the subject of Section 10(e)." *Id.* at 61,456 (emphasis added). Furthermore, the Commission ruled, there was no merit to the petitioners' claim that section 10(e)(1)'s limit of recoverable costs to those incurred under "FPA Part I" made OFA overhead and litigation costs unrecoverable. *Id.* at 61,457. According to the Commission, the recovery of those costs was justified because "the administration of FPA Part I . . . is inextricably interwoven with the administration of other federal statutes addressing important national resources, statutes that may be triggered by hydroelectric licensing or other action under Part I of the FPA." *Id.*

Next, the Commission rejected the petitioners' argument that the section 10(e)(1) requirement (also found in OBRA § 3401) that annual charges be "reasonable" and "fair and equitable" meant the Commission was obligated to provide a mechanism to review the OFAs' cost reports for reasonableness and consistency with recoverable costs under the Act. *Id.* at 61,455. Instead, the Commission said, the language addressed the Commission's "rate design" responsibility only. *Id.* at 61,455–56. In fact, FERC said that it "[did] not consider it to be in the ambit of this Commission's authority

to purport to tell another agency what studies or other reviews it should or should not undertake in the exercise of its statutory obligations." *Id.* at 61,458. It did announce, however, that thenceforth OFAs were required to certify as true and accurate their cost reports according to federal cost accounting rules. *Id.* at 61,456, 61,458. Future cost reports, the Commission said, must comply with the Office of Management and Budget's *Circular A–25—User Charges* and the *Federal Accounting Standards Advisory Board's Material Cost Accounting Concepts and Standards for the Federal Government: Statement of Federal Financial Accounting Standard Number 4. Id.* at 61,456–57. If OFA cost reports were so certified, the Commission then considered them based on substantial evidence and recoverable under section 10(e)(1). *Id.* at 61,456–58. In the future, challenges to recoverable OFA costs were to be made directly to the agency involved. *Id.* The Commission also required a complaining hydroelectric utility to lodge a placeholder appeal with the Commission CFO while pursuing its challenge before the agency. *Id.* Once the agency resolved the challenge, it was to submit a revised cost sheet to the Commission which would make an adjustment (if necessary) in the next annual charge total. *Id.* at 61,458. If the administrative process did not resolve the matter, the agency was required to file its cost documentation with the Commission for the record on appeal. *Id.* at 61,458 & n.44.

FERC, however, did not apply its new "certification" rule retroactively to the FY 1996 and FY 1997 OFA charges that were under challenge. Because those costs had been only partially certified, it again remanded to the ALJ for him to determine which FY 1996 and FY 1997 costs were substantiated. *Id.* at 61,458–59. While the *Idaho Falls II* matter was pending, two more years' worth of charges were assessed against, and paid by, the petitioners and they again challenged the OFA costs, this time for FY 1998 and FY 1999. In its *Idaho Falls II* order, FERC decided to apply its certification requirement to those appeals and ordered the OFAs to review their submissions for FY 1998 and FY 1999 to ensure that the costs were appropriately certified. It also

announced that cost submissions had to be certified within ninety days of the order. *Id.* at 61,458.

Thus, following *Idaho Falls II*, the petitioners' challenges to OFA costs in four fiscal years were pending: The FY 1996 and FY 1997 cost challenges were pending before the ALJ and the FY 1998 and FY 1999 cost challenges were pending FERC's approval of costs certified in accord with the *Idaho Falls II* order. The parties again settled the FY 1996 and FY 1997 costs, the ALJ again certified the settlement and the petitioners again sought FERC approval. *City of Idaho Falls*, 95 F.E.R.C. ¶ 61,126, 61,396 (2001), (*Idaho Falls III*). This time the Commission gave its approval, noting at the same time that the settlement "does not affect or preclude any parties' appeals, on legal grounds that are the same as or similar to legal arguments made in this proceeding, of any other pending or future OFA cost submittals." *Id.* Although *Idaho Falls III* is entitled "Order Approving Settlement Agreement," *id.* at 61,395, the Commission went beyond the settlement and ruled on the FY 1998 and FY 1999 appeals. *Id.* at 61,397. With little discussion other than to state that the new certification requirement was applicable "starting with the OFAs' costs for FY 1998 and FY 1999," *id.* at 61,396, the Commission "granted and denied to the extent discussed in the text of this order" the FY 1998 and FY 1999 cost appeals, *id.* at 61,397.

Because the FY 1998 and FY 1999 challenges had not been consolidated with the FY 1996/FY 1997 appeals that were the subject of the settlement, and because the *Idaho Falls III* order failed to indicate which FY 1998/FY 1999 costs were allowed (and disallowed) consistent with the certification requirements of *Idaho Falls II*, the petitioners sought clarification from the Commission and, in the alternative, requested rehearing. Motion for Clarification or, in the Alternative, Request for Rehearing Regarding Appeals of FY 1999 Annual Charges Bills, at 7, 15, *City of Tacoma*, 95 F.E.R.C. ¶ 61,465 (2001) (*Idaho Falls III* Motion for Clarification).[8] In their

---

[8] The petitioners focused on the FY 1998 costs at issue here, but they also requested that their motion be considered with other

motion, the petitioners indicated they had obtained through Freedom of Information Act requests correspondence between the agencies and the Commission regarding the FY 1998/FY 1999 OFA cost recertifications that FERC in *Idaho Falls II* had ordered to be performed. *Id.* at 6 & n.18. Based on the correspondence, they contemplated refunds because many of the OFA submissions did not conform to the *Idaho Falls II* standard. *Id.* Because the *Idaho Falls III* order was silent as to which certifications had been allowed, the petitioners inquired whether the Commission intended to deduct the nonconforming costs from the charges. *Id.* at 6, 10 n.25, 11 n.32, 11 n.35, 12 n.40.

In *City of Tacoma*, the Commission clarified its *Idaho Falls III* order, declaring that it did indeed intend in *Idaho Falls III* to resolve the appeals of the FY 1998 and FY 1999 OFA costs. *City of Tacoma*, 95 F.E.R.C. ¶ 61,465, 62,672 (2001). The Commission further explained that the petitioners and others that had appealed FY 1998/FY 1999 costs would receive credit in FY 2001 assessments consistent with the deficiencies they had identified in their clarification motion. *Id.* at 62,672. The Commission rejected the petitioners' assertion that upward adjustments made by some OFAs were impermissible, concluding instead that, because the charges had been appealed, they were not final and thus subject to change. *Id.* at 62,673. The Commission further provided that the petitioners could again "obtain Commission review of any legal, policy, and factual arguments they wish to make with respect to the rulings in [the *Idaho Falls II*] and [*Idaho Falls III*] Orders regarding the OFA FY 1998 costs" should they appeal the FY 2001 assessments. *Id.* at 62,672.

The petitioners filed the instant petition on August 27, 2001, seeking review of the Commission's orders in *Idaho Falls II, Idaho Falls III* and *City of Tacoma* and raising the same legal issues they raised in *Idaho Falls II & III* as well as additional issues ruled upon by the Commission in *City of Tacoma*. At the same time, the petitioners have separately

petitioners' appeals of both FY 1998 and FY 1999 OFA costs. *Idaho Falls III* Motion for Clarification, at 7–8.

appealed the Commission's decision regarding FY 1998 and FY 1999 credits reflected in FY 2001 assessments following *City of Tacoma*—although in that appeal (which is not before us) they simply make four challenges specific to the FY 1998 and FY 1999 credits.[9]

## II.

### A.

The Commission first challenges our jurisdiction to consider the petition. In doing so, it places great significance on the fact that it specifically provided in *City of Tacoma* that "Licensees that appealed the OFA FY 1998/FY 1999 costs submittals, may have the opportunity to obtain commission review of any legal, policy, and factual arguments they wish to make with respect to the rulings in [the *Idaho Falls II*] and [*Idaho Falls III*] Orders regarding the OFA FY 1998 costs, . . . within the appeal time periods that will pertain for the FY 2001 bills." *City of Tacoma*, 95 F.E.R.C. at 62,672. Because it permitted the petitioners to resurrect their challenges to OFA costs in any FY 2001 appeal, the Commission says, its rulings on issues regarding the FY 1998 costs are not "final" for the purpose of judicial review. Furthermore, the Commission insists, because the petitioners have in fact appealed the FY 1998 costs adjustments included in the FY 2001 assessments, their petition is incurably premature be-

---

[9] That appeal maintains that (1) the FERC accounting staff failed to execute the *City of Tacoma* order because it allowed costs the Commission indicated were not recoverable; (2) the FERC staff failed to issue a refund to a licensee that, they allege, timely appealed FY 1998/FY 1999 costs; (3) credit is due them for two OFAs' cost reports because the OFAs failed to provide documentation supporting the submitted costs; and (4) credit is due them for costs the OFAs did not properly attribute to municipal and non-municipal projects as required by FERC rule. *See generally* Appeal of Credits Contained in FY 2001 Annual Charges Bills Attributable to Other Federal Agencies' FY 1998 and FY 1999 Costs and Motion for Waiver of Regulations and for Expedited Action, FERC Proj. No. 4881, Sept. 4, 2001 (petitioners' FY 2001 Charges Appeal).

cause they cannot simultaneously seek both agency reconsideration and judicial review of the same FERC order. *See Tenn. Gas Pipeline Co. v. FERC*, 9 F.3d 980, 980 (D.C. Cir. 1993).

We reject the Commission's challenge to this court's jurisdiction. *See* 5 U.S.C. § 704; 16 U.S.C. § 825*l*(b); *Papago Tribal Util. Auth. v. FERC*, 628 F.2d 235, 238–39 (D.C. Cir.), *cert. denied*, 449 U.S. 1061 (1980). As the Commission would have it, so long as it permits the petitioners to "raise all legal, factual or policy issues regarding 1998 costs" in challenges to subsequent annual charges, its action is not final because it has not finally " 'impose[d] an obligation, denie[d] a right, or fixe[d] some legal relationship as a consummation of the administrative process,' " and therefore the orders are not final. *Ala. Power Co. v. FERC*, 993 F.2d 1557, 1566 (D.C. Cir. 1993) (quoting *Papago Tribal Util. Auth.*, 628 F.2d at 239). The Commission's willingness to reconsider the petitioners' legal arguments originally made and ruled on in *Idaho Falls II & III* and *City of Tacoma* in a later proceeding notwithstanding, the Commission's decisions manifest that its position with respect to the issues raised in the petition is unchanged. The Commission does not deny that its orders firmly establish its position on the issues under review, namely the OFA cost submission and reimbursement scheme and the scope of section 10(e)(1) of the FPA. Indeed, the Commission does not suggest that it intends to shift its position on these issues nor does it indicate that it could alter its decision denying the petitioners' challenge to the increased FY 1998/FY 1999 costs resulting from the recertifications following the Commission's *Idaho Falls II* order. "[N]ormally, where an agency has stated that the action in question governs and will continue to govern its decisions, such action must be viewed as final." *Miss. Valley Gas Co. v. FERC*, 68 F.3d 503, 508 (D.C. Cir. 1995) (internal quotations omitted) (emphasis removed). As a practical matter, the Commission's rulings in the orders represent a "definitive [position that] has a direct and immediate . . . effect on the day-to-day business of the parties challenging the action," manifesting that the orders are sufficiently final for judicial review. *Ciba-*

*Geigy Corp. v. EPA*, 801 F.2d 430, 436 (D.C. Cir. 1986) (internal quotations omitted); *see Fourth Branch Assocs. (Mechanicville) v. FERC*, 253 F.3d 741, 746–47 (D.C. Cir. 2001). Accordingly, we conclude that the Commission's orders challenged by the petitioners constitute final agency actions that this court has the power to review.[10]

## B.

The petitioners argue that the Commission has misconstrued the scope of recoverable costs under section 10(e)(1) because both the structure and the text of section 1701(a) manifest that the only recoverable OFA costs thereunder are those "reasonable and necessary" costs for "studies and other reviews" by OFAs. They contend that the Commission wrongly relies on section 3401 of OBRA to broaden the scope of recoverable costs under the FPA and challenge the Commission's denial of FY 1998 OFA cost refunds based only on OFAs' certifications. They also complain that the Commission erroneously denied them refunds from the costs the OFAs added upon recertification following *Idaho Falls II*. Because we grant the petitioners' petition on another ground, however, we leave the resolution of those claims to the Commission on remand.[11]

---

[10] We also reject the Commission's contention that the FY 2001 appeal now before the Commission is a request for a rehearing of *City of Tacoma* or the other two orders under review and therefore is premature. That appeal challenges FY 2001 assessments, *supra* n.9, and, although they contain FY 1998 OFA cost adjustments, the appeal does not relate to the orders considered by the Commission in *Idaho Falls II & III* and *City of Tacoma*—those orders involved FY 1999/FY 2000 assessments (FY 1998/FY 1999 OFA costs).

[11] We note, however, our skepticism of the petitioners' assertion that the Congress, when it amended section 10(e) to add "including any reasonable and necessary costs incurred by Federal and State fish and wildlife agencies and other natural and cultural resource agencies in connection with studies or other reviews carried out by such agencies," intended to limit recoverable costs to those related only to "studies and other reviews." The use of the word "including" itself indicates that the enumerated costs are not the sole

The petitioners' primary argument is that FERC failed to meet the mandate of section 10(e)(1) of the FPA in not determining whether the OFAs' reported costs were reasonable and necessary within the scope of section 10(e)(1). To determine whether FERC has acted, as the petitioners contend, contrary to law "we look first to determine whether Congress has delegated to the agency the legal authority to take the action that is under dispute." *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002) (internal quotations omitted). To answer that question, we turn to the two-step approach of *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *Transmission Access Policy Study Group v. FERC*, 225 F.3d 667, 687 (D.C. Cir. 2000); *S. Cal. Edison Co. v. FERC*, 195 F.3d 17, 22–23 (D.C. Cir. 1999). Under that approach the court first asks if "Congress has directly spoken to the precise question at issue"—here whether the Commission may delegate to other federal agencies the task of reviewing the reasonableness of reported FPA costs. *Chevron*, 467 U.S. at 842–43 (*Chevron* step one). We use the traditional tools of statutory construction, beginning with "the most traditional tool of statutory construction, [reading] the text itself." *S. Cal. Edison*, 195 F.3d at 22–23 (citing *Halverson v. Slater*, 129 F.3d 180, 184 (D.C. Cir. 1997)). And to decide whether the plain meaning of the text resolves the issue, the court considers "the particular statutory language at issue, as well as the language and design of the statute as a whole." *Halverson*, 129 F.3d at 184 (internal quotations omitted) (emphasis removed). Because the Congress has directly spoken in section 10(e)(1), directing that FERC is to review FPA-related costs upon which assess-

---

recoverable costs. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 188–89 (1941) (holding that National Labor Relations Act provision authorizing NLRB to take "affirmative action, including reinstatement of employees" did not limit Board's remedies to reinstatement only) ("To attribute such a function to the participial phrase introduced by 'including' is to shrivel a versatile principle to an illustrative application. We find no justification whatever for attributing to Congress such a casuistic withdrawal of the authority which, but for the illustration, it clearly has given the Board.").

ments are made, we reject FERC's differing interpretation as impermissible under the statute.

As we have previously held, the authority to assess charges under section 10(e)(1) of the FPA is FERC's exclusive responsibility. *E. Columbia Basin Irrigation Dist. v. FERC*, 946 F.2d 1550, 1557–58 (D.C. Cir. 1991). Section 10(e)(1) provides that it is the Commission that is to fix the amount of "reasonable annual charges" under the Act. In doing so, it is the Commission that must "seek to avoid increasing the price to the consumers of power by such charges." 16 U.S.C. § 803(e)(1). By delegating to other federal agencies the responsibility of ensuring that their cost reports are reasonable and within the scope of the Act, the Commission fails to discharge both duties. Its delegation of its responsibility means that the OFAs, not the Commission, "fix" the amounts of annual charges. *Id.* And by not meeting its obligation to review OFA costs, the Commission cannot act to "avoid increasing the price to consumers of power by such charges" as it is required to do. *Id.* Given "the particular statutory language at issue, as well as the language and design of the statute as a whole," *Halverson*, 129 F.3d at 184 (internal quotations omitted) (emphasis removed), we conclude that FERC's interpretation invalidly strays from the plain text of the Act.

Although the Commission responds that the "reasonableness" command of section 10(e)(1) references only its "rate design" responsibility, i.e., the statute requires the Commission to ensure only that a reasonable methodology to assess annual charges is established, FERC fails to explain its rationale for interpreting section 10(e)(1) to mean that it has no duty to review the costs themselves. Its failure is understandable given that its construction of section 10(e)(1) conflicts with its construction of other provisions of the Act. For example, section 30(e) of the FPA, which relates to fish and wildlife agencies' cost recovery incurred in connection with hydroelectric exemption applications for small conduit facilities, directs that the "Commission . . . shall establish fees . . . adequate to reimburse the fish and wildlife agencies . . . for any *reasonable* costs incurred in connection with any studies

or other reviews carried out by such agencies for purposes of compliance with this section." 16 U.S.C. § 823a(e) (emphasis added). Notwithstanding, the Commission interprets the language differently:

> Since the Commission is responsible for establishing fees to reimburse "reasonable costs," it necessarily has the authority to determine whether the costs submitted by agencies are reasonable. The Commission has a statutory obligation . . . to ensure that agencies are not unreasonable in making their cost statements and study requirements under FPA section 30(c).

Fees for Hydroelectric Project Applications to Reimburse Fish and Wildlife Agencies, 52 Fed. Reg. 48,398, 48,402 (Dec. 22, 1987). The Commission's failure to interpret consistently two statutory provisions that are *in pari materia* manifests that it has not correctly read "the language and design of the statute as a whole." *Halverson*, 129 F.3d at 184 (internal quotations omitted) (emphasis removed). Because section 10(e) plainly commands the Commission to assess annual charges under the FPA, including a review of OFA cost reports on which the charges are based, we conclude that the Commission, by failing to conduct that review, has acted contrary to "the unambiguously expressed intent of Congress" and therefore contrary to law.

For the foregoing reasons, we vacate the orders under review, namely, *Idaho Falls II*, 93 F.E.R.C. ¶ 61,145 (2000), *Idaho Falls III*, 95 F.E.R.C. ¶ 61,126 (2001), and *City of Tacoma*, 95 F.E.R.C. ¶ 61,465 (2001), and remand to FERC for further proceedings consistent with this opinion.

*So ordered.*