# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 19, 2011        Decided November 4, 2011

No. 10-1392

WOLF RUN MINING COMPANY,
PETITIONER

v.

FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION
AND SECRETARY OF LABOR,
RESPONDENTS

———

On Petition for Review of a Decision of
the Federal Mine Safety and Health Review Commission

———

*Ralph Henry Moore* argued the cause for the petitioner.

*Samuel Charles Lord*, Attorney, United States Department of Labor, argued the cause for the respondent. *W. Christian Schumann* and *Jerald S. Feingold*, Attorneys, United States Department of Labor, were with him on brief. *John T. Sullivan*, Attorney, entered an appearance.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Petitioner Wolf Run Mining Company (Wolf Run) seeks review of a decision of the Federal Mine Safety and Health Review Commission (Commission), an agency within the United States Department of Labor (Labor). *Wolf Run Mining Co.*, 32 FMSHRC 1228 (2010). The issue on appeal is whether a Mine Safety and Health Administration (MSHA) inspector is authorized to designate the violation of a safeguard notice issued pursuant to section 314(b) of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 *et seq.* (Mine Act), as "significant and substantial" under section 104(d)(1) of the Mine Act, which limits the "significant and substantial" designation to a violation of a "mandatory health or safety standard." 30 U.S.C. § 814(d). For the reasons set forth below, we agree with the Commission majority that the violation of a safeguard notice issued pursuant to section 314(b) amounts to a violation of section 314(b) and is therefore a violation of a mandatory safety standard which can be designated "significant and substantial." Accordingly, we deny Wolf Run's petition.

## I. Background

*A. Statutory*

Section 104(d)(1) of the Mine Act authorizes the Secretary of Labor (Secretary), through her authorized representative,[1] to designate an operator's violation of a mandatory health or safety standard as "significant and substantial" "if . . . such violation is of such a nature as could significantly and substantially contribute to the cause and

---

[1] The Secretary's authorized representative is the MSHA inspector. *See* 29 U.S.C. § 557a; 30 U.S.C. § 954.

effect of a coal or other mine safety or health hazard." 30 U.S.C. § 814(d)(1). "Designation of a violation as 'significant and substantial' under section 104(d)(1) can have significant consequences to a mine operator." *Cyprus Emerald Res. Corp.* v. *FMSHRC*, 195 F.3d 42, 43 & n.1 (D.C. Cir. 1999). For instance, the minimum penalty for a citation involving a "significant and substantial" violation issued under section 104(d)(1) is $2,000 whereas a citation without the "significant and substantial" designation has no minimum penalty. *Compare* 30 U.S.C. § 820(a)(3)(A) *with id.* § 820(b)(1). "Significant and substantial" violations can also lead to a withdrawal order. *See infra* note 6.

Section 3(*l*) of the Mine Act defines a "mandatory health or safety standard" as "the interim mandatory health or safety standards established by [Titles] II and III of this [Act], and the standards promulgated pursuant to [Title] I of this [Act]." 30 U.S.C. § 802(*l*). Under Title I of the Mine Act, the Secretary may, through notice and comment rulemaking, "develop, promulgate, and revise as may be appropriate, improved mandatory health or safety standards for the protection of life and prevention of injuries in coal or other mines." *Id*. § 811(a). Title II of the Mine Act provides for interim mandatory health standards "applicable to all underground coal mines" that are to "be enforced in the same manner and to the same extent as any mandatory health standard promulgated under the provisions of [Title I of the Act]." *Id*. § 841(a). Title III of the Mine Act provides similar authority for interim mandatory safety standards "applicable to all underground coal mines" and "enforced in the same manner and to the same extent as any mandatory safety standard promulgated under [Title I of the Act]." *Id*. § 861(a).

Included in Title III is section 314(b) which provides that "*[o]ther safeguards* adequate, in the judgment of an authorized representative of the Secretary, *to minimize*

*hazards with respect to transportation of men and materials shall be provided.*"  30 U.S.C. § 874(b) (emphases added); *see also* 30 C.F.R. § 75.1403 (repeating verbatim section 314(b)). The Secretary has chosen to implement section 314(b) by authorizing a MSHA inspector to issue a safeguard notice on a mine-by-mine basis and has established "the criteria by which [the inspector] will be guided in requiring" such safeguard.  *Id.* § 75.1403-1(a).[2]  To require a safeguard pursuant to section 314(b) and 30 C.F.R. § 75.1403, the MSHA inspector issues a written safeguard notice to an operator specifying the safeguard the operator must provide and the operator is then given a certain amount of time to comply.  "If the safeguard is not provided within the time fixed and if it is not maintained thereafter," the inspector issues a citation to the operator pursuant to section 104 of the Mine Act.  *Id.* § 75.1403-1(b); s*ee* 30 U.S.C. § 814 (setting forth citation issuance procedure).

---

[2] Section 75.1403-1 provides in part:

> (a) Sections 75.1403–2 through 75.1403–11 set out the criteria by which an authorized representative of the Secretary will be guided in requiring other safeguards on a mine-by-mine basis under § 75.1403. Other safeguards may be required.

> (b) The authorized representative of the Secretary shall in writing advise the operator of a specific safeguard which is required pursuant to § 75.1403 and shall fix a time in which the operator shall provide and thereafter maintain such safeguard. If the safeguard is not provided within the time fixed and if it is not maintained thereafter, a notice shall be issued to the operator pursuant to section 104 of the Act.

30 C.F.R. § 75.1403-1(a)−(b).

*B. Factual*

Wolf Run operates the Sentinel underground coal mine in Barbour County, West Virginia. On June 27, 2000, a MSHA inspector issued safeguard notice number 7095089 with respect to the Sentinel mine. The notice required that all moving conveyor belts at the Sentinel Mine be provided with "suitable crossing facilities where persons are required to cross over or under [them]."[3] The safeguard notice cited both section 314(b) and 30 C.F.R § 75.1403-5(j)[4] as its authority.

On January 23, 2008, a MSHA inspector issued citation number 6606199 to Wolf Run for failing to provide "a suitable crossing facility" at the Sentinel mine in violation of 30 C.F.R. § 1403-5(j) and the safeguard notice issued on June 27, 2000. The inspector designated the violation "significant and substantial."

Wolf Run contested the citation and the case was assigned to an administrative law judge (ALJ).[5] Before the

---

[3] The notice recited that the lack of a suitable crossing facility at conveyor belt #1 in Unit #2 exposed miners to the risk of being struck by material falling from the conveyor belt as well as the risk of contacting the conveyor belt when crawling under or climbing over it. Wolf Run was required to provide a crossing facility at all conveyor belts later on the same day the notice was issued.

[4] Section 1403-5(j) provides that "[p]ersons should not cross moving belt conveyors, except where suitable crossing facilities are provided." 30 C.F.R. § 1403-5(j).

[5] After the Secretary notifies an operator of the proposed civil penalty, the operator has thirty days to contest the citation and/or the proposed penalty. 30 U.S.C. § 815(a). The Secretary then informs the Commission and the Commission provides the operator an opportunity for a hearing before an ALJ. *Id*. § 815(d); 29 C.F.R. § 2700.50. Within thirty days of the ALJ's decision, the operator

ALJ, Wolf Run moved for a partial summary decision, arguing that a violation of a safeguard notice cannot be designated "significant and substantial" under section 104(d)(1) of the Mine Act because it does not constitute a violation of a mandatory health or safety standard. The Secretary opposed Wolf Run's motion. On December 18, 2008, the ALJ denied Wolf Run's motion. Wolf Run then sought review of the ALJ's decision before the Commission. It stipulated that it had violated 30 C.F.R. § 1403-5(j), that the gravity level was "reasonably likely" to cause "lost work days or restricted duty" injury for at least one miner, that its negligence level was "moderate" and that the Secretary's proposed civil penalty of $1,304 was appropriate[6] pursuant to the criteria listed in the Mine Act. 32 FMSHRC at 1230; s*ee* 30 U.S.C. § 815(b)(1)(B).[7]

On October 21, 2010, the Commission affirmed the ALJ's decision. The Commission majority concluded that the Congress "directly address[ed] the question of whether a violation of section 314(b) constitutes a violation of a mandatory safety standard" by placing "section 314(b) []

---

may seek the Commission's discretionary review thereof. 29 C.F.R. § 2700.70(a).

[6] Although Wolf Run does not contest the proposed penalty, it can suffer additional adverse consequences from the "significant and substantial" designation. 30 U.S.C. § 814(d), (e). As noted, successive "significant and substantial" violations can lead to a withdrawal order. *Id*. § 814(e)(1).

[7] The criteria include "the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the operator charged in attempting to achieve rapid compliance after notification of a violation." 30 U.S.C. § 815(b)(1)(B).

within the section 3(l) definition of a mandatory safety standard." 32 FMSHRC at 1256. Accordingly, the Commission continued, "[b]ecause a proven violation of a safeguard notice is necessarily a violation of section 314(b), it follows that the violation of a safeguard notice is a violation of a mandatory safety standard and can constitute a [significant and substantial] violation." *Id*. The dissenting commissioner concluded *inter alia* that a MSHA inspector cannot designate a violation of a safeguard notice issued pursuant to section 314(b) "significant and substantial" because neither 30 C.F.R. § 75.1403-5(j) nor the safeguard notice itself falls within the statutory definition of a mandatory safety standard.

Wolf Run timely filed a petition for review of the Commission's decision. The court has jurisdiction pursuant to section 106(a)(1) of the Mine Act. 30 U.S.C. § 816(a).

## II. Analysis

Wolf Run challenges the Commission's interpretation of section 314(b) of the Mine Act as authorizing the "significant and substantial" designation to attach to the violation of a safeguard notice issued pursuant thereto. "We review the Commission's legal conclusions *de novo*." *Sec'y of Labor v. Keystone Coal Mining Corp.*, 151 F.3d 1096, 1099 (D.C. Cir. 1998). In matters of statutory interpretation, the court " 'must give effect to the unambiguously expressed intent of Congress.' " *Sec'y of Labor ex rel. Bushnell v. Cannelton Indus., Inc.*, 867 F.2d 1432, 1435 (D.C. Cir. 1989) (quoting *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). To determine whether the meaning of a statutory provision is plain, the court's analysis begins with "the most traditional tool of statutory construction, [reading] the text itself." *City of Tacoma v. FERC*, 331 F.3d 106, 114 (D.C. Cir. 2003) (internal quotation marks and citation omitted) (brackets in *Tacoma*). In deciding whether the text

resolves the meaning of a statutory provision, the court considers "the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id.* (quoting *Halverson v. Slater*, 129 F.3d 180, 184 (D.C. Cir. 1997)). If "the statute is silent or ambiguous with respect to the specific issue," the court defers to the Secretary's interpretation provided the interpretation is " 'a permissible construction of the statute.' " *Cannelton Indus.*, 867 F.2d at 1435 (quoting *Chevron*, 467 U.S. at 843).

As we have previously held, the Mine Act clearly provides that the "significant and substantial" designation is limited to a violation of a "mandatory health or safety standard." 30 U.S.C. § 814(d)(1); *see Cyprus Emerald*, 195 F.3d at 44 ("[The Mine Act] unambiguously authorizes a 'significant and substantial' finding for violation only of a mandatory health or safety standard."). Whether a safeguard notice issued pursuant to section 314(b) constitutes a mandatory health or safety standard so that its violation can support a "significant and substantial" finding is the issue before us.

*A. Section 314(b) Is "Interim Mandatory Safety Standard"*

The text of the Mine Act unambiguously establishes that section 314(b) constitutes an interim mandatory safety standard. Section 3(*l*) defines a "mandatory health or safety standard" as "the interim mandatory health or safety standards established by [Titles] II and III of this [Act], and the standards promulgated pursuant to [Title] I of this [Act]." 30 U.S.C. § 802(*l*). While section 314(b) is not a "standard[] promulgated pursuant to [Title] I of [the Mine] Act," it is plainly an interim mandatory safety standard "established by [Title] III."

That section 314(b) constitutes an interim mandatory safety standard is manifested by the text of section 301(a):

> The provisions of sections [302] through [318] of [the Act] shall be interim mandatory safety standards applicable to all underground coal mines until superseded in whole or in part by improved mandatory safety standards . . . and shall be enforced in the same manner and to the same extent as any mandatory safety standard promulgated under [section 101] of this [Act].

30 U.S.C. § 861(a). As the Secretary has not issued improved mandatory safety standards for transportation hazards in underground coal mines, section 314(b) remains an "interim mandatory safety standard . . . [that] shall be enforced in the same manner and to the same extent as any mandatory safety standard." *Id*. And while section 314(b) itself does not set forth specific safeguards, neither section 301(a) nor section 3(*l*) expressly requires such specificity. 30 U.S.C. §§ 802(*l*), 861(a).

Enforcing section 314(b) as an interim mandatory safety standard is also consistent with other mine-specific safety provisions of the Mine Act that are enforceable as mandatory safety standards if they are required by, but not listed in, Title III. *United Mine Workers of Am., Int'l Union v. Dole*, 870 F.2d 662, 667–70, 672 (D.C. Cir. 1989) (section 302(a) of Mine Act covering mine-specific roof control plan provisions required by, but not listed in, section 302(a) is enforceable as an interim mandatory safety standard). Like the statutory provision at issue in *United Mine Workers*, section 314(b) does not list the specific safeguards that operators must provide. Nevertheless, treating section 314(b) as an interim mandatory safety standard, the court concluded, ensures that the specific safeguards required under section 314(b) "are enforceable as if they were mandatory standards." *Id*. at 667 n.7 (quoting S. Rep. No. 95-181, at 22 (1977), *reprinted in*

1977 U.S.C.C.A.N. 3401, 3425)); *see also Zeigler Coal Co. v. Kleppe*, 536 F.2d 398, 409 (D.C. Cir. 1976) (interpreting language in 1969 Federal Coal Mine Safety Act identical to sections 3(*l*) and 303(o) of Mine Act to mean mine-specific plan provisions required by, but not listed in, Title III were enforceable as "mandatory standard[s]") (alteration added).

Wolf Run relies on our *Cyprus Emerald* decision to argue that a violation of a safeguard notice issued pursuant to section 314(b) cannot be designated "significant and substantial." Neither our decision nor the Commission's decision in *Cyprus Emerald*, however, answers the question *sub judice*. *Cyprus Emerald* dealt with the violation of a regulation that was promulgated under section 508 of the Mine Act and therefore did not come within section 3(*l*)'s definition of a mandatory health or safety standard because it was neither promulgated pursuant to Title I nor established by Title II or Title III of the Mine Act. *Cyprus Emerald*, 195 F.3d at 43-45; *Cyprus Emerald Res. Corp.*, 20 FMSHRC 790, 799–800 & n.10 (1998). In contrast, this case does involve the violation of a mandatory safety standard because Wolf Run, in failing to provide the required safeguard, violated section 314(b) which *is* an interim mandatory safety standard pursuant to sections 301(a) and 3(*l*) of the Mine Act. Section 314(b) authorizes the Secretary "to create what are, in effect, mandatory safety standards on a mine-by-mine basis." *S. Ohio Coal Co.* (*SOCCO I*), 7 FMSHRC 509, 512 (1985)).

Wolf Run's concerns regarding section 314(b)'s lack of notice and/or pre-enforcement review are overstated because section 314(b) itself—as well as the safeguard notice procedures—give an operator ample notice of what is required of it. The safeguard notice describes the safeguard the operator must provide and specifies the time the operator is given to do so. 30 C.F.R. § 75.1403-1(b); *see also Bethenergy Mines, Inc.*, 14 FMSHRC 17, 24 (1992) (operator

is not bound by criteria guiding issuance of safeguard notice pursuant to section 314(b) "unless, and until[] that operator is given notice, in a written safeguard from an authorized representative of the Secretary, that one or more of the criteria are applicable to its mine"). Additionally, in order to minimize the risk of arbitrary enforcement of section 314(b), the Commission has through adjudication interpreted the criteria so as to ensure that an operator has adequate notice of what safeguard is required. *S. Ohio Coal Co.* (*SOCCO II*), 14 FMSHRC 1, 12 (1992); *SOCCO I*, 7 FMSHRC at 512.[8]

Moreover, the Congress chose to allow the Secretary to regulate transportation hazards in underground coal mines on a mine-by-mine basis; it did not require that such regulation be subject to formal pre-enforcement review or notice-and-comment. *Compare* 30 U.S.C. § 811(a), (d) (providing for notice-and-comment rulemaking and pre-enforcement judicial review of mandatory health or safety standards issued pursuant to Title I) *with id*. § 874(b) (authorizing Secretary to impose additional "safeguards" in her discretion). As Wolf Run did in this case, an operator can seek meaningful review of a safeguard notice issued pursuant to section 314(b) in the citation proceeding. *See id*. § 815. The review process mirrors that for the review of roof and ventilation plans that, like safeguard notices issued pursuant to section 314(b), are

---

[8] The Commission requires a safeguard to "identify with specificity the nature of the hazard at which [the safeguard] is directed and the conduct required of the operator to remedy such hazard" and interprets a safeguard based upon "a narrow construction of the terms of the safeguard and its intended reach." *SOCCO I*, 7 FMSHRC at 512. Also, the inspector must issue a safeguard "based on his evaluation of the *specific* conditions at a *particular* mine and on his determination that such conditions create a transportation hazard in need of correction." *SOCCO II*, 14 FMSHRC at 12.

required by, but not listed in, Title III of the Mine Act. *Carbon Cnty. Coal Co.*, 7 FMSHRC 1367, 1371 (1985) (review of operator's challenge to ventilation plan "may be obtained by the operator's refusal to adopt the disputed provision, thus triggering litigation before the Commission" pursuant to section 109, 30 U.S.C. § 820); *see also Zeigler Coal*, 536 F.2d at 406–07 (operator may obtain review of proposed ventilation plan in citation proceeding after failing to adopt proposed plan).[9]

As the Commission has previously acknowledged, it may well be that "the safety of underground coal miners would be better advanced by the promulgation of mandatory safety standards" that ensure uniform regulation of transportation hazards for all underground coal mines. *SOCCO II*, 14 FMSHRC at 16; *see also Wolf Run Mining Co.*, 32 FMSHRC at 1239–43 (Duffy, Comm'r, dissenting). And as the dissenting commissioner here observed, "[h]aulage accidents consistently rank at or near the top of causes for mine fatalities and serious injuries" and "surface coal miners and both surface and underground hardrock miners *are* protected . . . by comprehensive mandatory transportation and materials handling standards." *Id.* at 1241 (emphasis added).[10] Nonetheless, section 314(b) is an "unusually broad

---

[9] Wolf Run cites one instance in which an operator allegedly sought pre-enforcement review of roof control and ventilation plan provisions but in that case, the operator was not allowed to challenge the provisions until the citation proceeding. *Prairie State Generating Co.*, 32 FMSHRC 602, 602 (2010) (MSHA and operator entered into agreement that allowed operator to begin operation without approved ventilation plan so long as operator challenged ventilation plan provisions in citation proceeding following MSHA inspector's issuance of citations).

[10] The dissenting commissioner reasoned that safeguard notices are not analogous to the mine-specific safety provisions at issue in

grant of regulatory power," *SOCCO I*, 7 FMSHRC at 512, that "manifests a legislative purpose to guard against all hazards attendant upon haulage and transport in coal mining," *Jim Walter Res. Inc.*, 7 FMSHRC 493, 496 (1985).

*B. Safeguard Notice Violation Constitutes Violation of Section 314(b)*

As discussed *supra*, section 314(b) is included in Title III of the Mine Act and Title III establishes interim mandatory safety standards for underground coal mines that are enforceable "to the same extent as any mandatory safety standard promulgated under [Title I]." 30 U.S.C. § 861(a). Section 314(a) sets forth specific standards for the transportation of persons in underground coal mines, 30 U.S.C. § 874(a); section 314(b) then provides that "*[o]ther* safeguards, adequate in the judgment of an authorized representative of the Secretary, to minimize hazards with respect to transportation of men and materials shall be provided," 30 U.S.C. § 874(b) (emphasis added). "Other" plainly refers to the specific safeguards set forth in section 314(a). Wolf Run also argues that the omission of the word "operator" in section 314(b) means that section 314(b) only

---

*Zeigler Coal* because the safeguard notice procedure is different from the adoption procedures applicable to roof control and ventilation plans. 32 FMSHRC at 1240–41 (relying on *Cyprus Emerald*). He also stresses that regulating the transportation of persons and materials in underground coal mines through safeguard notices rather than mandatory safety standards applicable to all underground coal mines was detrimental to the safety of underground coal miners. *Id.* at 1241–42. While his concerns about the safety of underground coal miners are legitimate, they relate to a policy choice made by the Congress. The text of the Mine Act plainly authorizes the Secretary, through MSHA inspectors, to regulate the transportation of persons and materials in underground coal mines through safeguard notices.

delegates authority to the Secretary through the MSHA inspectors without also imposing any duty on the operator. But other subsections of section 314 impose on the operator the duty to provide safeguards and they also omit the word "operator." *See, e.g.*, 30 U.S.C. § 874(a) ("Every hoist used to transport persons at a coal mine shall be equipped with . . . stop controls."); 30 U.S.C. § 874(c) ( "An accurate and reliable indicator of the position of the cage, platform, skip, bucket, or cars shall be provided."); 30 U.S.C. § 874(e) ("Each locomotive and haulage car used in an underground coal mine shall be equipped with automatic brakes . . . ."). And contrary to Wolf Run's reading, section 314(b) does not merely "delegate[] authority to individual mine inspectors to issue notices to provide safeguards." Appellant's Br. at 24. Section 314(b) imposes on the operator the duty to "*provide*" those safeguards the inspector deems "adequate . . . to minimize hazards with respect to transportation of men and materials." 30 U.S.C. § 874(b) (emphasis added).

We conclude that section 314(b) is an interim mandatory safety standard, the violation of which can be designated "significant and substantial," *Cyprus Emerald*, 195 F.3d at 44; we further conclude that the violation of a safeguard notice issued pursuant to section 314(b) amounts to a violation of section 314(b). Accordingly, we deny the petition for review.

*So ordered.*