Petition for review dismissed by published opinion. Judge KING wrote the majority opinion, in which Judge GREGORY joined. Judge AGEE wrote a dissenting opinion.
KING, Circuit Judge:
Petitioner Cobra Natural Resources, LLC (“Cobra”), seeks appellate relief from a decision of the Federal Mine Safety and Health Review Commission (the “Commission”), temporarily reinstating a coal miner. In October 2012, Russell Ratliff filed a discrimination complaint with the Secretary of Labor, alleging that Cobra had unlawfully retaliated against him under the Mine Safety and Health Act of 1977 (the “Mine Act”), by discharging him on the basis of safety concerns he had articulated with respect to Cobra’s mining operations. After an Administrative Law Judge (the “ALJ”) determined that Ratliff was entitled to temporary reinstatement pending a final order on his complaint, the Commission affirmed the reinstatement order. Asserting appellate jurisdiction under the collateral order doctrine, Cobra seeks judicial review of the Commission’s interlocutory decision. As explained below, we dismiss the petition for lack of jurisdiction.
I.
A.
In response to what was characterized as the “notorious history of serious accidents and unhealthful working conditions” in the coal mining industry, the Mine Act was enacted in 1977 to establish a compre *84 hensive regulatory scheme concerning mine safety and health in this country. See Donovan v. Dewey, 452 U.S. 594, 603, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981). The Act contains a whistleblower provision that prohibits mine operators from discriminating against coal miners for making complaints “under or related to” the Act, including any complaint notifying an operator of “an alleged danger or safety or health violation” in a coal mine. See 30 U.S.C. § 815(c)(1).[1]
Because a complaining coal miner “may not be in the financial position to suffer even a short period of unemployment or reduced income pending resolution of the discrimination complaint,” the Mine Act established the temporary reinstatement procedure underlying this proceeding. See S.Rep. No. 95-181, at 37 (1977), reprinted in 1977 U.S.C.C.A.N. 3401 (1977); see also 30 U.S.C. § 815(c)(2). Pursuant to the Mine Act, the Secretary receives a miner’s discrimination complaint and conducts an appropriate investigation; if it is determined that the complaint was not “frivolously brought,” the Secretary applies to the Commission for an order temporarily reinstating the miner’s employment, “pending final order on the complaint.” See 30 U.S.C. § 815(c)(2). If the coal operator disagrees with the Secretary’s determination, it may request a hearing before an ALJ.
A reinstatement order does not require that a coal miner remain employed under any circumstance, but is subject to “changes that occur at the mine after [the order’s] issuance.” See Sec’y on behalf of Gatlin v. KenAmerican Resources, Inc., 31 FMSHRC 1050, 1054 (2009). Thus, a coal operator’s temporary reinstatement obligation can be “tolled” by the occurrence of certain events, such as a subsequent reduction-in-force that would have included the miner. See id. An ALJ’s ruling on a temporary reinstatement issue, including whether the reinstatement should be tolled, is subject to discretionary review by the Commission.
Regardless of whether the terminated coal miner is temporarily reinstated, the Secretary must complete the discrimination investigation within ninety days of the filing of the complaint. If it is decided that a violation of the whistleblower provision has occurred, the Secretary must file a complaint with the Commission, which conducts a hearing and issues a final order. If the Secretary instead determines that a violation has not occurred, the temporary reinstatement ends. See N. Fork Coal Co. v. FMSHRC, 691 F.3d 735, 744 (6th Cir.2012).
B.
Russell Ratliff, a southern West Virginia coal miner, was an equipment operator at Cobra’s Mountaineer Mine in Mingo County until, on October 17, 2012, he was abruptly discharged by Cobra. Promptly thereafter, Ratliff filed a discrimination complaint alleging that he had been terminated in retaliation for engaging in protected activity. The Secretary concluded that Ratliff’s claim was not frivolous and applied to the Commission for his temporary reinstatement. Cobra requested a hearing on the application, contending that Ratliffs complaint was frivolous and also asserting a tolling defense.[2]
*85 The hearing was conducted before an ALJ on January 7, 2013. In his January 14, 2013 Decision and Order (the “Reinstatement Order”), the ALJ agreed with the Secretary that Ratliffs discrimination complaint was not frivolously brought.[3] The ALJ also rejected Cobra’s tolling contention, concluding that Cobra had failed to show that “work [was] not available to [Ratliff]” because of an asserted multi-employee layoff. See Reinstatement Order 18-19 (citing Gatlin, 31 FMSHRC at 1054-55). The ALJ directed Cobra to immediately reinstate Ratliff, with the same hours of work, rate of pay, and benefits received.
Cobra next sought Commission review of the Reinstatement Order, specifically challenging the ALJ’s analysis of the tolling issue. By its February 28, 2013 Decision (the “Commission Decision”), the Commission granted review but affirmed the Reinstatement Order.[4] On March 27, 2013, Cobra timely filed the underlying petition for review, summarily asserting jurisdiction under the collateral order doctrine and contending that the Commission erroneously denied Cobra’s tolling defense.
II.
Although Rule 28(a)(4) of the Federal Rules of Appellate Procedure requires that an opening appellate brief contain a detailed jurisdictional statement, both parties gave short shrift to the asserted basis for appellate jurisdiction in this matter.[5] As a result, prior to oral argument, we obtained supplemental briefing on the jurisdiction question. Therein, both parties once again summarily urged us to accept jurisdiction under the collateral order doctrine.[6] Nevertheless, “we are obliged to satisfy ourselves of subject-matter jurisdiction, even where the parties concede it.” United States v. Urutyan, 564 F.3d 679, 684 (4th Cir.2009) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)). Mindful of our obligation with respect to jurisdiction, we must assess whether the Commission Decision is reviewable.

a:

Section 106(a)(1) of the Mine Act authorizes “any person adversely affected or aggrieved by an order of the Commission” to seek review in the court of appeals for the circuit in which the underlying statutory violation is alleged to have occurred. See 30 U.S.C. § 816(a)(1). Although the Act uses the term “order” rather than “final order,” we have recognized that only a *86 final Commission order is entitled to review in this Court. See Monterey Coal Co. v. FMSHRC, 635 F.2d 291, 292-93 (4th Cir.1980); see also Bell v. New Jersey, 461 U.S. 773, 778-79, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983) (“The strong presumption is that judicial review will be available only when agency action becomes final.”).
The collateral order doctrine was first identified in 1949 in Cohen v. Beneficial Industrial Loan Corp., where the Supreme Court recognized a “small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.” 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[7] The Cohen approach, limiting collateral order review only to certain exceptional cases, retains its validity today. Distilling Cohen and its progeny, the Court requires that an appealable collateral order must “[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.” Will v. Hallock, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006) (alterations in original) (internal quotation marks omitted); see also Al Shimari v. CACI Int’l, Inc., 679 F.3d 205 (4th Cir.2012) (en banc) (rejecting collateral order jurisdiction over, inter alia, law of war defense).
The three requirements for collateral order jurisdiction are necessarily stringent, and the Supreme Court has emphasized that the doctrine must “never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.” See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994). On this point, the Court has been consistently unequivocal. As Justice Souter stressed in Will:
[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope. And we have meant what we have said; although the court has been asked many times to expand the small class of collaterally appealable orders, we have instead kept it narrow and selective in its membership.
546 U.S. at 350, 126 S.Ct. 952 (emphasis added) (internal quotation marks omitted). The Court’s admonitions respecting the limited scope of the collateral order doctrine “reflect[] a healthy respect for the virtues of the final-judgment rule.” Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106, 130 S.Ct. 599, 175 L.Ed.2d 458 *87 (2009).[8] Our distinguished former colleague Judge Williams urged caution in applying the collateral order doctrine to administrative decisions, reminding us that “[i]t is not the place of appellate courts to scrutinize agency action at every step---Rather, [we] must proceed cautiously, allowing lower decision-makers thoroughly to resolve the intricacies of underlying claims.” See Carolina Power & Light Co. v. U.S. Dept of Labor, 43 F.3d 912, 918 (4th Cir.1995).[9]
In delineating the boundaries of the collateral order doctrine, “ ‘the importance of the right asserted [on appeal] has always been a significant part’ ” of the analysis. See Will, 546 U.S. at 352, 126 S.Ct. 952 (quoting Lauro Lines s.r.l. v. Chasser, 490 U.S. 495, 502, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989) (Scalia, J., concurring)).[10] As the Supreme Court recently explained, the traditional importance requirement “finds expression” in both the second and third prongs of the three-part test. See Mo-
hawk, 558 U.S. at 107, 130 S.Ct. 599. The second prong insists, quite clearly, on “important questions separate from the merits.” Id. (internal quotation marks omitted). And “more significantly,” the third prong — whether a right is “effectively un-reviewable” on appeal from a final judgment — requires careful judicial balancing that takes into account the importance of the issue the appellate court might review. See id.
In assessing whether we possess jurisdiction under the collateral order doctrine, “we do not engage in an ‘individualized jurisdictional inquiry.’ ” See Mohawk, 558 U.S. at 107, 130 S.Ct. 599 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 473, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)). That is, our focus is not on the particular order at issue, but rather on the “entire category” of orders to which it belongs. See Digital Equip., 511 U.S. at 868, 114 S.Ct. 1992. Thus, the chance that “the litigation at hand might be speeded” *88 or “a particular injustice averted” by an immediate appeal does not provide a basis for jurisdiction under the collateral order doctrine. Id. (internal quotation marks omitted).
B.
Having identified some controlling principles, we restate the jurisdictional issue: whether a Commission decision granting temporary reinstatement to a coal miner is immediately appealable by the coal operator under the collateral order doctrine. Although this issue is one of first impression in our circuit, two of our sister courts of appeals have confronted the question and concluded that appellate jurisdiction is appropriate. Those decisions, however, are of limited persuasive effect. The Eleventh Circuit’s decision in Jim Walter Resources, Inc. v. FMSHRC, 920 F.2d 738 (11th Cir.1990), was rendered more than two decades ago, prior to the Supreme Court’s more recent, emphatic warnings— made in its Digital Equipment, Will, and Mohawk decisions — concerning the narrow and limited scope of the collateral order doctrine. The Seventh Circuit addressed the issue more recently, but resolved the jurisdictional inquiry in a somewhat cursory fashion. See Vulcan Constr. Materials, L.P. v. FMSHRC, 700 F.3d 297, 300 (2012) (concluding in single paragraph that collateral order requirements were satisfied). As a result, those decisions fail to convince us of the proper jurisdictional course, or even inform our analysis. Instead, we will assess for ourselves the requirements of the collateral order doctrine and resolve the jurisdictional question presented in this proceeding.[11]
1.
The collateral order doctrine first requires that a putatively appealable order conclusively determine a disputed question. This “most basic element” is sometimes presumed satisfied so long as the district court (or federal agency) has decided the matter presented on appeal. See 15A Charles Alan Wright et ah, Federal Practice and Procedure § 3911.1 (2d ed.1992). Nonetheless, there is little justification for authorizing an immediate appeal under the collateral order doctrine if there is a “plain prospect” that the lower court could alter its own ruling. See FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 407 (1st Cir.1987) (internal quotation marks omitted). Clearly, if a court or agency expressly holds open the possibility of reconsideration, a collateral order appeal should not be authorized. See Swint v. Chambers Cnty. Comm’n, 514 U.S. 35, 42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (declining collateral order jurisdiction where district court expressly “planned to reconsider its ruling” on qualified immunity); see also Jamison v. Wiley, 14 F.3d 222, 230 (4th Cir.1994) (explaining that “a tentative and preliminary ruling ... which plainly holds open the prospect of reconsideration” is not subject to collateral order jurisdiction).
*89 Both Cobra and the Secretary, relying on the Jim Walter Resources opinion, maintain that a Commission order awarding temporary reinstatement is “a folly consummated decision,” with “literally no further steps that [an operator] can take to avoid the Commission’s order at the agency level.” See 920 F.2d at 744 (internal quotation marks omitted). Although such an assertion might have been correct more than twenty years ago when Jim Walter Resources was rendered, it is inaccurate today, thanks to the tolling defense at the heart of Cobra’s petition. Pursuant to the Commission’s 2009 ruling in its Gatlin case, a coal operator is entitled, prior to an ALJ’s decision on the merits, to seek modification of a temporary reinstatement award on the basis of “a change of circumstances,” such as a subsequent large-scale reduction-in-force. See Sec’y on behalf of Gatlin v. KenAmerican Resources, Inc., 31 FMSHRC 1050, 1054 (2009). Indeed, the Commission Decision expressly acknowledged that proposition, recognizing “the possibility that there may be circumstances in which [the ALJ], prior to the hearing on the merits, may appropriately order an intermediate hearing regarding changed circumstances.” Commission Decision 5 n.3.
Inasmuch as an order of temporary reinstatement remains subject to modification during the pendency of a coal miner’s discrimination complaint, such an order can hardly be characterized as a conclusive determination. In the volatile coal mining industry, the prospect that a mine could be idled or a major layoff occur provides little support for expending the time and resources of an appellate court on tentative or nonfinal agency decisions. And, as the Commission Decision demonstrates, a ruling on temporary reinstatement can be expressly held open for the possibility of reconsideration. Accordingly, an interlocutory Commission ruling awarding temporary reinstatement to a coal miner such as Ratliff fails to satisfy the initial requirement of the collateral order doctrine.[12]
2.
Second, an appealable collateral order must also “resolve an important issue completely separate from the merits of the action.” Will, 546 U.S. at 349, 126 S.Ct. 952. This aspect of the collateral order doctrine has two subparts: the importance aspect and the separability aspect. Because importance is a “more significant ]” part of the third collateral order requirement, we focus here on whether the issue before the Commission in assessing a miner’s application for temporary reinstatement is sufficiently distinct from the merits of the miner’s discrimination claim. See Mohawk, 558 U.S. at 107, 130 S.Ct. 599.
We have consistently held “that the ‘issues raised in an interlocutory appeal need not be identical to those to be determined on the merits to fail under [the second] requirement; only a threat of substantial duplication of judicial decision making is necessary.’ ” Dickens v. Aetna Life Ins. Co., 677 F.3d 228, 233 (4th Cir.2012) (alteration in original) (quoting S.C. State Bd. of Dentistry v. FTC, 455 F.3d 436, 441 (4th *90 Cir.2006)). Expressed differently, “[a]n order is only ‘collateral’ to the merits of a case if it does not ‘involve considerations that are enmeshed in the factual and legal issues comprising the plaintiffs cause of action.’” Bd. of Dentistry, 455 F.3d at 441 (quoting Coopers & Lybrand, 437 U.S. at 469, 98 S.Ct. 2454).
Both Cobra and the Secretary rely on Jim Walter Resources in maintaining that, although the temporary reinstatement analysis “necessarily entail[s] some consideration of the factual allegations in the minerf’s] complaint[ ],” it is “conceptually distinct from a decision on the ultimate merits.” See Jim Walter Res., 920 F.2d at 744. The substance of this asserted distinction seems to be that “[t]he temporary reinstatement hearing merely determined] whether the evidence mustered by the [miner] to date established] that [his complaint is] nonfrivolous, not whether there is sufficient evidence of discrimination to justify permanent reinstatement.” Id. As a result, the parties contend, a temporary reinstatement order is adequately separable from the miner’s discrimination claim itself.
The parties have substantially overstated the distinction between temporary and permanent relief in a coal miner’s discrimination proceeding. There is, no doubt, a different evidentiary burden at each stage: a coal miner applying for temporary reinstatement need not prove a pri-ma facie case of discrimination, but must only produce some evidence of “protected activity, adverse action, and a nexus between the two.” See Sec’y on behalf of Stahl v. A & K Earth Movers, Inc., 22 FMSHRC 323, 326 (2000). Thus, an analysis under that lenient standard differs, to some extent, from that which the ALJ must undertake following a full hearing on the merits. From a practical standpoint, however, a temporary reinstatement analysis is simply a highly deferential look at the same basic facts and factors that ultimately control the outcome of the miner’s claim. Consider the Commission’s own guidance: in reviewing an application for temporary reinstatement, “it is useful to review the elements of a discrimination claim in order to assess whether the evidence ... meets the non-Mvolous test.” See Sec’y on behalf of Williamson v. CAM Mining, LLC, 31 FMSHRC 1085, 1088 (2009).
There is simply no doubt that, regardless of any “conceptual” difference, the considerations involved in the temporary reinstatement process are deeply enmeshed with the factual and legal issues comprising the miner’s underlying discrimination claim. Accordingly, an order awarding temporary reinstatement plainly fails this aspect of the second requirement of the collateral order doctrine.
3.
The third and final collateral order requirement is that the order be “effectively unreviewable on appeal from a final judgment.” Will, 546 U.S. at 349, 126 S.Ct. 952. An unreviewable order is one that has significant and irreparable effects. See Johnson v. Jones, 515 U.S. 304, 311, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (“significant”); Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 376, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (“irreparable”). An order may also be unreviewable if it “affect[s] rights that would be irretrievably lost in the absence of an immediate appeal.” See Richardson-Merrell, Inc. v. Roller, 472 U.S. 424, 430-31, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). But even such irrevocable harm will not alone suffice to trigger collateral order jurisdiction. See Digital Equip., 511 U.S. at 872, 114 S.Ct. 1992. Whether an order is effectively unreviewable “simply cannot be an *91 swered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement” — i.e., an assessment of whether a sufficiently important interest would be imperiled by our refusal to provide an immediate appellate review. See Mohawk, 558 U.S. at 107, 130 S.Ct. 599 (internal quotation marks omitted).
Cobra maintains that the impact of the Commission Decision on temporary reinstatement is significant and irreparable, and that once a final judgment is entered by the Commission, the harm to Cobra will “evaporate” and it will “effectively lose any opportunity for a judicial hearing” of its challenge to the decision. See Jim Walter Res., 920 F.2d at 745.[13] In our view, the central “harm” to a coal operator arising from a temporary reinstatement order is that it must reemploy and pay the coal miner his salary and benefits during the pendency of the administrative proceedings on his discrimination claim.[14] The operator’s interest implicated, therefore, is primarily an economic one. We are thus faced with deciding whether that economic interest is sufficiently important to demand the protection of a collateral order appeal.
The Supreme Court has conducted its importance analysis under the third prong of the collateral order doctrine by first combing its precedent to identify recurring characteristics that merit collateral order appealability, and then comparing those characteristics to the proceeding at hand. See Will, 546 U.S. at 350-54, 126 S.Ct. 952. In Will, the Court examined four of its prior decisions where the interests at issue were found sufficiently important to satisfy the “effectively unreviewable” requirement. See id. In Nixon v. Fitzgerald, involving Presidential immunity, the Court recognized collateral order jurisdiction and identified “compelling public ends” that were “rooted in the constitutional tradition of the separation of powers.” See 457 U.S. 731, 758, 770, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). In Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), where an order denying qualified immunity to the Attorney General was at issue, the Court held that the denial of such immunity was subject to a collateral order appeal, and “spoke of the threatened disruption of governmental functions, and fear of inhibiting able people from exercising discretion in public service.” See Will, 546 U.S. at 352, 126 S.Ct. 952. The importance of a State’s dignitary interests steered the analysis of the Eleventh *92 Amendment immunity question in Puerto Rico Aqueduct & Sewer Authority v. Met-calf & Eddy, Inc., 506 U.S. 189, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993), where the Court determined that collateral order jurisdiction was properly invoked. And the double jeopardy claim presented in a pretrial appeal justified the application of collateral order jurisdiction in Abney v. United States. See 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). The common thread in those cases, according to the Court, was a “particular value of a high order,” or a “substantial public interest.” Will, at 352-53, 126 S.Ct. 952.[15]
On the other hand, the Supreme Court has declined to exercise collateral order jurisdiction in putative appeals involving, inter alia: a pretrial discovery order that rejected a claim of attorney-client privilege (Mohawk); a pretrial order rejecting application of the Federal Tort Claims Act’s judgment bar (Will); and a court order declining to enforce a settlement agreement in a trademark case (Digital Equipment). In each of these decisions, the Court agreed that the interest at stake, although “important in the abstract,” failed to justify the cost of expanding the categories of decisions that are appealable under the collateral order doctrine. See Mohawk, 558 U.S. at 108, 130 S.Ct. 599.
In sum, a coal operator’s financial interest in avoiding wage payments to a reinstated miner who returns to his job in the coal mines pales in comparison to those interests that have been deemed sufficiently important to give rise to collateral order jurisdiction. Frankly, a coal operator’s economic interests do not begin to approach the importance of several interests — such as the attorney-client privilege — that the Supreme Court has deemed insufficient. We readily recognize, of course, that economic harm suffered by a coal operator may sometimes be “imperfectly reparable” on final order review. The collateral order doctrine, however, requires a great deal more. See Mohawk, 558 U.S. at 107, 130 S.Ct. 599. In these circumstances, we are unable to conclude that failing to apply the collateral order doctrine to an administrative order temporarily reinstating a coal miner to his job would imperil a “particular value of a high order” or a “substantial public interest.” See Will, 546 U.S. at 352-53, 126 S.Ct. 952. Accordingly, the Commission Decision also fails to satisfy the third and final collateral order requirement.
III.
Pursuant to the foregoing, the collateral order doctrine does not permit an interlocutory review of the proceedings below. We are therefore bereft of jurisdiction and must dismiss Cobra’s petition for review.

PETITION FOR REVIEW DISMISSED.

. Section 815(c)(1) of Title 30 specifies, in relevant part, that a coal operator
shall [not] discharge or in any manner discriminate against ... any miner ... because such miner ... has filed or made a complaint under or related to [the Mine Act] ... of an alleged danger or safety or health violation in a coal ... mine.

. In addition to seeking to refute Ratliff's claim of retaliatory termination, Cobra relied *85 on a reduction-in-force that occurred at the Mountaineer Mine in November 2012. According to Cobra, Ratliff would have been among those who lost their jobs. As a result, Cobra contended that a temporary reinstatement, even if granted, should be tolled as of January 15, 2012, the last date the laid-off miners were paid.

. The Reinstatement Order is found at J.A. 175-94. (Citations herein to "J.A.-" refer to the contents of the Joint Appendix filed by the parties in this matter.)

. The Commission Decision is found at J.A. 237-43.

. The Secretary, who briefed and argued this matter on behalf of the Respondents, agrees with Cobra that we possess jurisdiction under the collateral order doctrine. The Commission, electing not to participate as an active litigant in this proceeding, did not file a brief or participate in oral argument. As it advised the Court, the Commission "remains a respondent and will monitor the litigation.”

. In responding to our Order of October 15, 2013, directing supplemental briefing on jurisdiction, the Secretary simply referred us, in order "to avoid unnecessary repetition,” to the summary jurisdictional statement in her opening brief. Put mildly, we were surprised and somewhat baffled by that submission.

. Our dissenting colleague maintains that the Commission Decision was a final order for purposes of 30 U.S.C. § 816(a)(1), such that we may assume jurisdiction over Cobra’s petition without resort to the collateral order doctrine. In support of that assertion, the dissent relies only on some dicta from other circuits. The dissent’s position conveniently ignores our own precedent, which establishes that an agency order is not final if it is a "preliminary step in the final disposition of [the] case on its merits.” See Monterey Coal, 635 F.2d at 293. That the Commission Decision is just such a "preliminary step” is evident from § 815(c) of the Mine Act, which provides for a miner's reinstatement “pending final order on the complaint.” This plain language, viewed within the structure of the Mine Act, shows in a clear, compelling manner that a temporary reinstatement award is simply interlocutory, and that the "final order” will be entered subsequently. Finally, the dissent stands alone in its characterization of a temporary reinstatement award as a final order: all the parties here, as well as every court of appeals to consider the issue, agree that appellate jurisdiction in such a situation must derive — if at all — from the collateral order doctrine.

. Our good dissenting colleague blithely proceeds as if the most recent two decades of Supreme Court jurisprudence on the collateral order doctrine never existed. Overlooking the Court's explicit instructions to limit application of the collateral order doctrine — see Will, 546 U.S. at 350, 126 S.Ct. 952 ("And we have meant what we have said”) — the dissent would casually create, under the collateral order doctrine, an entirely new category of appealable non-final orders. The inescapable result of its position is that the scope of collateral order jurisdiction in administrative agency cases would be dramatically expanded. Such an expansion would constitute an unjustifiable rejection of the Court's decisions in Digital Equipment, Will, and Mohawk.

. We observe that the Secretary's expansive view of collateral order jurisdiction in this proceeding, in addition to flouting the Supreme Court’s admonitions, is a sharp turn from the position taken by the Department of Justice as amicus curiae in our recent en banc decision in Al Shimari. There, the DOJ relied substantially on Mohawk and Digital Equipment — decisions the Secretary failed to mention here, even in its supplemental brief on jurisdiction — and stressed the narrow scope of the collateral order doctrine. See Br. of the United States as Amicus Curiae, Al Shi-mari v. CACI Int'l, Inc., No. 09-1335 (4th Cir. Jan. 14, 2012), ECF No. 146.

.For several years we appear to have identified a fourth collateral order requirement: that the order "present a serious and unsettled question on appeal.” See, e.g., Carolina Power, 43 F.3d at 916. Later, in Under Seal v. Under Seal, we articulated the three-part test most frequently employed by the Supreme Court. See 326 F.3d 479, 483 (4th Cir.2003). This semantic shift did not at all abandon the “importance” aspect to which Justice Scalia refers; the decision simply reorganized it. More recent Supreme Court decisions have reemphasized that collateral order jurisdiction remains reserved for exceptional cases only, where "the justification for immediate appeal [is] sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes.” See Mohawk, 558 U.S. at 107, 130 S.Ct. 599.

. The dissent identifies other decisions where the two judges in this panel's majority argued against the creation of a circuit split. For example, in Wachovia Bank v. Schmidt, I dissented, arguing that the "creation of a circuit split” concerning the corporate citizenship of national banks was erroneous and "unwarranted.” See 388 F.3d 414, 439 (4th Cir.2004) (King, J., dissenting). Our good dissenting colleague here neglects to explain that the Supreme Court ultimately agreed with my dissent in the Wachovia Bank case, unanimously and unceremoniously reversing the decision of the Wachovia majority. See Wachovia Bank v. Schmidt, 546 U.S. 303, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006). Put simply, there is nothing wrong with creating a circuit split when it is justified. At the end of the day, justice is served by reaching the correct result.

. If an interlocutory order from which a collateral order appeal is sought "fails to satisfy any [of the three] requirements, it is not an immediately appealable collateral order.” S.C. State Bd. of Dentistry v. FTC, 455 F.3d 436, 441 (4th Cir.2006) (internal quotation marks omitted). Nonetheless, we are satisfied in this proceeding to also consider the other collateral order requirements, as they are independent alternative grounds for dismissal of Cobra’s petition for appeal. See Dickens v. Aetna Life Ins. Co., 677 F.3d 228, 233-34 (4th Cir.2012) (addressing all three collateral order requirements and declining jurisdiction where two were not satisfied).

. Were we to review Cobra’s contention without considering the importance issue, we would be ignoring Supreme Court authority. Even when the right asserted in an appeal sought under the collateral order doctrine would be “positively destroyed” by postponing appellate review, the Supreme Court has declined to exercise collateral order jurisdiction on the ground that the right at issue was “not sufficiently important to overcome the policies militating against interlocutory appeals.” See Lauro Lines, 490 U.S. at 502-03, 109 S.Ct. 1976 (Scalia, J., concurring) ("to make express what seems ... implicit” in majority’s rejection of collateral order jurisdiction over appeal involving contractual "right not to be sued” in particular forum).

. The dissent suggests that collateral order jurisdiction is justified by the possibility that a coal operator will sustain substantial non-economic harm as a result of being forced to reinstate a potentially disruptive employee. This assertion is utterly unpersuasive and entirely speculative, in that the miner's reinstatement does not immunize him from the consequences of his future misbehavior. Any legitimate misconduct by a reinstated miner unrelated to whistleblowing activities may justify his dismissal anew. Moreover, as was the case here, the coal operator and the miner may well enter into an agreement where the miner is economically — but not physically— reinstated. See J.A. 228-31.

. The dissent criticizes the panel majority’s analysis of the collateral order doctrine's importance requirement, asserting that we are simply "cataloguing cases." Post at 99. The dissent supports its point, ironically enough, with its own catalog of cases. See post at 99-100. A striking distinction between the two catalogs is that the dissent's begins in 1974 and goes back in time to what seems to have been a more permissive jurisdictional era. Our analysis, on the other hand, subscribes fully to the Supreme Court's more recent precedents, and their narrowing trend concerning application of the collateral order doctrine. In our view, we are obliged to carefully adhere to the Court's persistent admonitions that a court of appeals should avoid creating new categories of interlocutory appeals under the collateral order doctrine.