# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

——–——

Argued October 6, 2016        Decided October 20, 2016

No. 16-1094

CALPORTLAND COMPANY, INC.,
PETITIONER

v.

FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION
AND SECRETARY OF LABOR, ON BEHALF OF JEFFREY PAPPAS,
RESPONDENTS

——–——

On Petition for Review of an Order of
the Federal Mine Safety and Health Review Commission

——–——

*Brian P. Lundgren* argued the cause and filed the briefs for petitioner. *John M. Payne* and *Selena C. Smith* entered appearances.

*Edward Waldman*, Attorney, U.S. Department of Labor, argued the cause for respondent. With him on the brief was *W. Christian Schumann*, Counsel. *John T. Sullivan*, Attorney, Mine Safety and Health Review Commission, entered an appearance.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: CalPortland Company, Inc. ("CalPortland") petitions for review of a decision by the Federal Mine Safety and Health Review Commission ("Commission") ordering CalPortland to temporarily reinstate Jeffrey Pappas, pursuant to section 105(c)(2) of the Federal Mine Safety and Health Act of 1977 ("Mine Act"), 30 U.S.C. § 815(c)(2), pending final order on Pappas's underlying discrimination complaint currently pending before the Commission. We have jurisdiction over this petition pursuant to the collateral order doctrine and, because we conclude that Pappas was an "applicant for employment" who was not eligible for temporary reinstatement, we grant the petition for review and vacate the Commission's decision and order.

**I.**

"Congress adopted the Mine Act 'to protect the health and safety of the Nation's . . . miners,'" *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 202 (1994) (quoting 30 U.S.C. § 801(g)), by "strengthen[ing] and streamlin[ing] health and safety enforcement requirements" at the Nation's mines, *id.* at 211. To accomplish its goals, the Mine Act "charges two separate agencies with complementary policymaking and adjudicative functions." *Prairie State Generating Co. LLC v. Sec'y of Labor*, 792 F.3d 82, 85 (D.C. Cir. 2015). The Secretary of Labor ("Secretary"), acting through the Department of Labor's Mine Safety and Health Administration ("MSHA"), "sets regulatory standards of mine safety, conducts regular mine inspections, and issues citations

and orders in response to violations." *Id.* (citing 29 U.S.C. § 557a; 30 U.S.C. §§ 813, 814; *Thunder Basin*, 510 U.S. at 202–04 & n.5). "The Commission, an adjudicatory body established as independent of the Secretary, reviews challenges to MSHA's actions." *Id.* at 85–86 (citing 30 U.S.C. §§ 815(d), 823).

Relevant to this case, the Mine Act also includes a whistleblower provision, 30 U.S.C. § 815(c), which prohibits a mine operator from discriminating against a miner or interfering with a miner's statutory rights because the miner engaged in protected activity. *Leeco, Inc. v. Hays*, 965 F.2d 1081, 1083 (D.C. Cir. 1992); *Council of S. Mountains, Inc. v. FMSHRC*, 751 F.2d 1418, 1420–21 (D.C. Cir. 1985). Section 105(c) establishes procedures for the filing and investigation of complaints made by "[a]ny miner or applicant for employment" and authorizes the Commission to adjudicate contested complaints. *See* 30 U.S.C. § 815(c)(2)–(3); *Simpson v. FMSHRC*, 842 F.2d 453, 456 n.3 (D.C. Cir. 1988).

At the center of this case is section 105(c)(2)'s temporary reinstatement provision. "Because a complaining . . . miner 'may not be in the financial position to suffer even a short period of unemployment or reduced income pending resolution of the discrimination complaint,'" *Cobra Nat. Res., LLC v. FMSHRC*, 742 F.3d 82, 84 (4th Cir. 2014) (quoting S. Rep. No. 95-181, at 37 (1977)), if the Secretary finds that a discrimination complaint was "not frivolously brought," the Commission "shall order the immediate reinstatement of the miner pending final order on the complaint," 30 U.S.C. § 815(c)(2). Although section 105(c) protects the rights of both miners and applicants for employment, the temporary reinstatement remedy is limited to miners. *See id.* § 815(c)(1)–(3); *Piper v. KenAmerican Res., Inc.*, 35 FMSHRC 1969, 1972 & n.2 (July 3, 2013). Accordingly,

whether a complainant is a "miner" or an "applicant for employment" is a threshold issue that must be addressed before determining a complainant's entitlement to temporary reinstatement. *See Young v. Lone Mountain Processing, Inc.*, 20 FMSHRC 927, 932 n.5 (Sept. 4, 1998).

## II.

Beginning in or around 1999, Jeffrey Pappas worked as a miner at the Oro Grande cement plant in San Bernardino County, California. Martin Marietta Materials, Inc., which owned the plant through a subsidiary named Riverside Cement Company, was Pappas's employer. In 2014, while working for Martin Marietta at the Oro Grande plant, Pappas notified management about a supervisor's potentially unsafe directions. When management failed to fully address his concerns, Pappas notified a MSHA inspector, who investigated and issued several citations to Martin Marietta for safety violations. After MSHA issued these citations to Martin Marietta, Pappas's relationship with his managers and colleagues at the Oro Grande plant deteriorated, culminating in his discharge in March 2014. Pappas filed a section 105(c) discrimination complaint against Martin Marietta in April 2014 that resulted in a Commission-approved settlement reinstating Pappas to his former position at Oro Grande. Upon his return to work, his colleagues and direct supervisor harassed Pappas about his discrimination complaint and his prior safety concerns. He asked the plant's upper management, including Martin Marietta's Human Resources manager Jamie Ambrose, to intervene and stop the harassment, but Martin Marietta's management took no action.

On or around June 30, 2015, CalPortland executed a limited asset purchase agreement with Martin Marietta to

acquire the Oro Grande plant where Pappas worked and three related facilities, effective October 1, 2015. It is undisputed that Pappas was never employed by CalPortland, as CalPortland's purchase agreement with Martin Marietta did not include Martin Marietta's existing labor force and CalPortland did not agree to hire any of Martin Marietta's hourly employees in the purchase agreement.

To ensure that it could take control of the Oro Grande plant in October 2015 without shutting down the kiln, CalPortland began the staffing process early. In mid-August 2015, prior to CalPortland's effective acquisition of the Oro Grande plant, CalPortland contacted Jamie Ambrose, Martin Marietta's Human Resources manager, for advice on hiring decisions. Soon thereafter, Ambrose was offered and accepted the Human Resources manager position at CalPortland. Because of her prior employment with Martin Marietta, Ambrose knew about Pappas's previous section 105(c) complaint.

In mid-September 2015, CalPortland invited all of the employees from the four facilities covered by the asset purchase agreement, including the employees at the Oro Grande plant, to apply for employment with CalPortland. CalPortland did not advertise these positions to the general public and nearly all of the existing Martin Marietta employees applied. CalPortland made its hiring decisions on September 26, 2015, and extended employment offers to approximately 115 out of 130 applicants, with approximately 100 to 105 of those offered employment accepting positions with CalPortland. Pappas was one of the applicants from the Oro Grande plant who was not offered employment by CalPortland. On September 28, 2015, two days before CalPortland's acquisition of the Oro Grande plant, Martin Marietta told those miners who were not offered employment

by CalPortland to leave the plant immediately and not to return for their shifts on the following two days. These individuals, including Pappas, were paid by Martin Marietta through September 30, 2015, and given severance packages from Martin Marietta. Then, on October 1, 2015, CalPortland acquired the Oro Grande plant.

After CalPortland did not hire him, Pappas filed a section 105(c) complaint against CalPortland,[1] and on December 8, 2015, the Secretary, on behalf of Pappas, filed an application for temporary reinstatement. Notably, the Secretary sought an order directing CalPortland "to hire" Pappas. In support of the application, the Secretary relied on a declaration from a MSHA investigator stating that after Martin Marietta's employees were "terminated" and "CalPortland invited the existing Oro Grande employees to apply for *new* positions with CalPortland," "CalPortland decided not to hire Mr. Pappas" because of his April 2014 discrimination complaint against Martin Marietta. (emphasis added).

Focusing on Pappas's employment at the Oro Grande plant and Martin Marietta's active role in CalPortland's hiring decisions, the Administrative Law Judge concluded that Pappas was a "miner" for purposes of section 105(c) and approved the Secretary's application on January 12, 2016. *See Pappas v. CalPortland Co.*, 38 FMSHRC 53, 58–61, 66 (Jan. 12, 2016); *see also* 29 C.F.R. § 2700.45(c) (allowing operator to request hearing before an ALJ following receipt of Secretary's application for temporary reinstatement). The Commission, in a 4-1 decision, affirmed the ALJ's decision

---

[1] In his discrimination complaint filed with the MSHA, Pappas named "Riverside Cement" and "Martin Marietta" as the respondents, alleging a discriminatory "layoff/refusal of employment"; however, the Secretary ultimately sought an application for temporary reinstatement against CalPortland.

on February 8, 2016. *See Pappas v. CalPortland Co.*, 38 FMSHRC 137 (Feb. 8, 2016); *see also* 29 C.F.R. § 2700.45(f) (describing procedure for review by the Commission of an ALJ's temporary reinstatement order).

In affirming the ALJ's decision, the Commission found that CalPortland's hiring process, which the Commission characterized as "miner retention decisions" or "rehiring" decisions, occurred while Pappas was "[u]nquestionably" a "miner" at the Oro Grande plant. *See Pappas*, 38 FMSHRC at 141–42. Based on the fact that Jamie Ambrose, who was aware of Pappas's prior section 105(c) complaint, was involved in CalPortland's hiring process, *see id.*, the Commission held that CalPortland's "decision-making process . . . was done in conjunction with Martin Marietta," *id.* at 142; *see also id.* at 144 ("Pappas has alleged that he was the victim of a joint decision-making process involving Martin Marietta and CalPortland."). The Commission concluded that because "[t]emporary reinstatement was designed to maintain the status quo while miners proceed with their discrimination claims[,] [p]ermitting Pappas, who had worked at the Oro Grande cement plant for 16 years, to continue working at that plant pending the resolution of this matter, is consistent with this underlying Congressional intent." *Id.* at 144.

On February 22, 2016, the Commission denied CalPortland's petition for reconsideration. CalPortland filed its petition for review with this Court on March 8, 2016. On appeal, CalPortland does not challenge the Commission's determination that Pappas's complaint was not frivolously brought, *see id.* at 144–47, but argues that the Commission erred in holding that Pappas was a "miner" rather than an "applicant for employment" for purposes of section 105(c)(2)'s temporary reinstatement provision.

### III.

While neither party disputes that we have jurisdiction over a section 105(c)(2) temporary reinstatement order, we have "a special obligation" to satisfy ourselves of our own jurisdiction. *Micei Int'l v. Dep't of Commerce*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

### A.

Section 106(a) of the Mine Act provides that any person adversely affected by "an order" of the Commission may obtain judicial review of "such order." 30 U.S.C. § 816(a)(1). Although the Mine Act refers to an "order" rather than to a "final order," we have held that "the Mine Act limits appellate review to final agency action." *Meredith v. FMSHRC*, 177 F.3d 1042, 1047–48 (D.C. Cir. 1999). Two conditions must be satisfied for an action to be considered "final":

> First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). In light of the fact that "[a] final order need not necessarily be the very last order," *NetCoalition v. SEC*, 715 F.3d 342, 351 (D.C. Cir. 2013) (citation and internal quotation marks omitted), "there is a close issue of whether [a section 105(c)(2) temporary reinstatement] order is a final one for

purposes of appellate review." *Jim Walter Res., Inc. v. FMSHRC*, 920 F.2d 738, 744 (11th Cir. 1990); *see also Cobra*, 742 F.3d at 93–96 (Agee, J., dissenting) (concluding that a temporary reinstatement order is "a final order for purposes of appeal"); *N. Fork Coal Corp. v. FMSHRC*, 691 F.3d 735, 738–39 (6th Cir. 2012) (considering appeal from temporary reinstatement order without analyzing jurisdiction and noting that parties may seek judicial review of the Commission's "final order" (citing 30 U.S.C. § 816(a))). But given the "pragmatic and flexible nature" of the finality inquiry, *Rhea Lana, Inc. v. Dep't of Labor*, 824 F.3d 1023, 1027 (D.C. Cir. 2016) (citations and internal quotation marks omitted), we need not directly resolve this issue because, as explained below, we conclude that the Commission's order directing CalPortland to hire Pappas is immediately appealable pursuant to the collateral order doctrine.

**B.**

Courts of appeals "have jurisdiction of appeals from all *final* decisions of the district courts of the United States, . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291 (emphasis added). But the Supreme Court has given 28 U.S.C. § 1291 "a 'practical rather than a technical construction,'" meaning that "the statute encompasses not only judgments that 'terminate an action,' but also a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949)). We have also explained that "[t]he collateral order doctrine extends beyond the confines of 28 U.S.C. § 1291 to encompass the principle of administrative finality contained in section 106(a) of the Mine Act." *Meredith*, 177 F.3d at 1050. We are mindful,

however, that the collateral order doctrine is "a limited exception to the final judgment rule," *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 747 (D.C. Cir. 2016) (citing *Cohen*, 337 U.S. 541), that "must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered,'" *Mohawk Indus.*, 558 U.S. at 106 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

To come within the scope of the collateral order doctrine, an order must: "(i) conclusively determine[] a disputed question; (ii) resolve[] an important issue completely separate from the merits of the action; and (iii) [be] effectively unreviewable on appeal from a final judgment." *Meredith*, 177 F.3d at 1048 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). Each of these conditions must be satisfied for an order "to qualify as an immediately-appealable collateral order." *Fokker Servs.*, 818 F.3d at 748; *see also Mohawk Indus.*, 558 U.S. at 107–08.

Although we have applied the collateral order doctrine to issues arising under section 105(c) of the Mine Act, *see Meredith*, 177 F.3d at 1048–52, we have not determined whether a section 105(c)(2) temporary reinstatement order is subject to the collateral order doctrine. The Seventh and Eleventh Circuits have determined that such orders are reviewable under the collateral order doctrine, *Vulcan Constr. Materials, L.P. v. FMSHRC*, 700 F.3d 297, 300 (7th Cir. 2012); *Jim Walter*, 920 F.2d at 744–45 (determining in the 11th Circuit), but the Fourth Circuit has reached the opposite conclusion, *Cobra*, 742 F.3d at 88–92. For the following reasons, we conclude that all three requirements are satisfied in this case and, therefore, the Commission's temporary reinstatement order is an immediately appealable order under the collateral order doctrine.

First, the Commission's order directing CalPortland to hire Pappas conclusively determined the temporary reinstatement issue. To satisfy the conclusiveness condition, an order must be "a fully consummated decision," *Meredith*, 177 F.3d at 1052 (quoting *Abney v. United States*, 431 U.S. 651, 659 (1977)), that "conclusively and finally determined" the issue, *In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1209 (D.C. Cir. 2004) (citation and internal quotation marks omitted). The Commission's temporary reinstatement order "is a 'fully consummated' decision, and there are literally 'no further steps' that [CalPortland] can take in order to avoid the Commission's order at the agency level." *Jim Walter*, 920 F.2d at 744 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985)). Even if the temporary reinstatement order was "technically subject to modification, . . . [']there is no basis to suppose that the [Commission] contemplated any reconsideration of [the] decision.'" *Obaydullah v. Obama*, 609 F.3d 444, 447 (D.C. Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12–13 (1983)). In fact, the Commission denied CalPortland's petition for reconsideration on February 22, 2016, which suggests that its decision was not merely "tentative or subject to revision." *Sealed Case*, 381 F.3d at 1209 (citation and internal quotation marks omitted).

Second, the Commission's order satisfies the separability condition. A temporary reinstatement order has "no bearing" on the ultimate resolution of a complaint, as the complainant's discrimination case proceeds regardless of the Commission's holding on the temporary reinstatement application and the temporary reinstatement order does not affect the merits decision. *Cobra*, 742 F.3d at 98 (Agee, J., dissenting). This case also concerns a threshold issue—whether Pappas was a "miner" or an "applicant for employment" for purposes of his complaint—that is "completely independent from the merits

of whether [CalPortland] committed the acts charged in the complaint." *See Meredith*, 177 F.3d at 1051–52. Because both miners and applicants for employment are protected by the Act but only miners are eligible for temporary reinstatement, whether Pappas was a miner or an applicant is relevant only to the temporary reinstatement issue and need not be addressed in the merits decision.

Third, temporary reinstatement orders involve important interests that will be effectively unreviewable on appeal from a final order on the complaint. The "crucial question" in analyzing this condition is "whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Mohawk Indus.*, 558 U.S. at 108. During the period between the issuance of the temporary reinstatement order and the final order on the complaint—in this case, the ALJ's decision issued on January 12, 2016, and the underlying merits hearing on Pappas's complaint is scheduled for December 6-9, 2016—an operator may be unnecessarily forced to pay wages and employ a worker who has no meritorious claim with no procedure available to recoup these expenses. *See Cobra*, 742 F.3d at 95, 99 (Agee, J. dissenting). Miners have even more significant interests at stake. A miner, who "may not be in the financial position to suffer even a short period of unemployment or reduced income pending resolution of the discrimination complaint," *id.* at 96 (quoting S. Rep. No. 95-181, at 37 (1977)), may suffer irreparable financial harm if his right to appeal from an adverse decision is foreclosed. Denying immediate review of an order on temporary reinstatement may also have a chilling effect on a miner's willingness to report safety complaints. *See id.* at 99. And, because an appeal from the final order on the complaint need not reach issues concerning temporary reinstatement, the parties would "effectively lose any

opportunity for a judicial hearing of [their] claims." *Jim Walter*, 920 F.2d at 745; *see also Cobra*, 742 F.3d at 98 (Agee, J., dissenting) (explaining that "any issues related to the temporary order [are] effectively moot" when the Commission issues the final order on the complaint). This lack of appealability is particularly concerning when, as here, there is a dispute over the threshold issue of whether a complainant is eligible for temporary reinstatement. *See Meredith*, 177 F.3d at 1052 ("Once administrative proceedings have run their course, the interest in avoiding them has been vitiated and cannot be vindicated.") (citation omitted).

Because the Commission's temporary reinstatement order satisfies the requirements of the collateral order doctrine, we have jurisdiction to hear this petition for review.

## IV.

As noted, CalPortland timely petitioned for review, arguing that the Commission erred when it affirmed the ALJ's decision ordering CalPortland to "reinstate" Pappas even though Pappas had never been employed by CalPortland. We review the Commission's legal conclusions *de novo* and its findings of fact for substantial evidence. *Am. Coal Co. v. FMSHRC*, 796 F.3d 18, 23 (D.C. Cir. 2015).

## A.

The Secretary's reasonable interpretation of the Mine Act is accorded deference by both the Commission and this Court under the familiar two-step *Chevron* standard. *Am. Coal*, 796 F.3d at 23-24 (citations omitted); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–45 (1984). The Secretary's litigating position before the

Commission, which "is as much an exercise of delegated lawmaking powers as is the Secretary's promulgation of a . . . health and safety standard," is also entitled to *Chevron* deference. *Am. Coal*, 796 F.3d at 24 (citations and internal quotation marks omitted).

"Under the first step of *Chevron* we consider whether Congress has unambiguously addressed the question." *Id.* at 23–24. As the Supreme Court has made clear, "[a]gencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always give effect to the unambiguously expressed intent of Congress." *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2445 (2014) (citation and internal quotation marks omitted). Thus, "[a]n agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms." *Id.* If, however, the Mine Act is "silent or ambiguous with respect to the specific issue," *Sec'y of Labor v. Excel Mining, LLC*, 334 F.3d 1, 6 (D.C. Cir. 2003) (citation and internal quotation marks omitted), "we ask whether the Secretary's interpretation is reasonable," *Am. Coal*, 796 F.3d at 24.

**B.**

In relevant part, section 105(c)(2) of the Mine Act provides:

> Any miner or applicant for employment or representative of miners who believes that he has been discharged, interfered with, or otherwise discriminated against by any person in violation of this subsection may . . . file a complaint with the Secretary alleging such discrimination. . . . [I]f the Secretary finds that such complaint was not frivolously brought, the

> Commission, on an expedited basis upon application of the Secretary, shall order the immediate *reinstatement of the miner* pending final order on the complaint.

30 U.S.C. § 815(c)(2) (emphasis added). The parties do not dispute that section 105(c)(2)'s temporary reinstatement remedy is limited to "miners." *See Piper*, 35 FMSHRC at 1972 & n.2. The question, therefore, is whether Pappas was a "miner" eligible for temporary reinstatement.

The Secretary argues that the term "miner" in section 105(c)(2) is ambiguous as it relates to Pappas. Specifically, the Secretary asserts that Pappas "was both a 'miner' and an 'applicant for employment' at the Oro Grande cement plant," and contends that section 105(c)(2) does not address the question of whether a miner who applies for employment with the future operator of the mine at which the miner is working qualifies as a "miner" eligible for temporary reinstatement. Focusing on Pappas's previous employment for Martin Marietta, the Secretary argues that Pappas can be "reinstated" to a position at the Oro Grande plant. The Commission similarly concluded that Pappas was eligible for temporary reinstatement because he was "[u]nquestionably" a miner "at the Oro Grande plant" when CalPortland made its hiring decisions, *Pappas*, 38 FMSHRC at 141, and that permitting Pappas "to continue working at that plant" was consistent with the "underlying Congressional intent" in the Mine Act, *id.* at 144.

"To determine whether the meaning of a statutory provision is plain, the court's analysis begins with the most traditional tool of statutory construction, reading the text itself." *Wolf Run Mining Co. v. FMSHRC*, 659 F.3d 1197, 1200 (D.C. Cir. 2011) (citation, internal quotation marks, and

brackets omitted). In making this determination, we consider "the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id.* (citation and internal quotation marks omitted). "Ambiguity is a creature not of definitional possibilities but of statutory context," *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)), and "the presence of a difficult question of statutory construction does not necessarily render that provision ambiguous," *Meredith*, 177 F.3d at 1053. In short, we defer to an agency's interpretation of a statute "only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446–48 (1987)).

The Mine Act broadly defines a "miner" as "any individual working in a coal or other mine," 30 U.S.C. § 802(g), and Pappas was undeniably a "miner" for Martin Marietta at the Oro Grande plant during the relevant period. But this case concerns the use of the term "miner" in the specific context of section 105(c)(2)'s temporary reinstatement provision. Thus, the question at issue in this case is whether Pappas is a "miner" who is eligible for reinstatement. We conclude that Congress's use of the word "reinstatement" in section 105(c)(2) provides a "clear sense of congressional intent" on this issue. *See Gen. Dynamics*, 540 U.S. at 600.

To "reinstate" means to "restore []someone . . . to their [sic] *former position*," THE NEW OXFORD AMERICAN DICTIONARY 1428 (2d ed. 2005) (emphasis added); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1915 (1993) ("[T]o instate again[;] place again[] as in . . . a *former position*[.]" (emphasis added)); *Reinstate*, BLACK'S LAW

DICTIONARY 1477 (10th ed. 2014) ("To place again in a *former state or position*; to restore . . . ." (emphasis added)), and section 105(c)(2) explicitly ties "reinstatement" with the miner's "former position." *See* 30 U.S.C. § 815(c)(2) (stating that the Commission may require an offender to take affirmative action to abate a violation, "including . . . the rehiring or reinstatement of the miner to his *former position*" (emphasis added)). We agree with the Commission that, "[a]s a purely logical and semantic matter, one cannot be 'reinstated' to a position he has never held," *Piper*, 35 FMSHRC at 1972 n.2, and the Secretary acknowledges that the definition of reinstatement "may preclude an individual from being reinstated 'to a position he never held.'"

In this case, it is undisputed that Pappas has never been employed by or worked for CalPortland; during the relevant time period, he was a miner employed by Martin Marietta. *See, e.g.*, *Pappas*, 38 FMSHRC at 141–42 (finding that Pappas was a "miner" eligible for temporary reinstatement because he was "a 'miner' *employed by Martin Marietta*" when CalPortland decided not to hire him and he "experienced the effect of CalPortland's decision not to hire him while he was still a miner *working for Martin Marietta*" (emphases added)). In a final decision, CalPortland, as the successor operator of the Oro Grande plant, could perhaps be ordered to instate Pappas if it was found to have violated the Mine Act when it failed to hire him, *see* 30 U.S.C. § 815(c)(2), but it cannot be ordered to "*re*instate" Pappas to a position he never held at this preliminary stage in the proceedings. *Id.* (emphasis added). Furthermore, because Pappas was never employed by CalPortland, the involvement of Ambrose in CalPortland's hiring process, and her subsequent employment with CalPortland, does not affect "the status of Mr. Pappas as an applicant for employment with CalPortland." *Pappas*, 38 FMSHRC at 152 (Althen,

dissenting). While allegations concerning Ambrose's involvement in CalPortland's hiring decisions could be evidence of CalPortland's discrimination, they do not affect Pappas's status as an applicant for employment for purposes of section 105(c)(2).

In an attempt to create an ambiguity in the statute, the Secretary relies on the fact that Pappas was a miner, not with CalPortland, but *at the Oro Grande plant*. The Secretary, however, fails to identify any language in the Mine Act suggesting that the temporary reinstatement provision applies to a physical location rather than to an employer. The Commission's own precedent illustrates that this remedy applies to a specific employer, not to a mine. *See Piper*, 35 FMSHRC at 1972–73 (concluding that complainant "was not a mere 'applicant' for a position with KenAmerican" because "[h]e had actively worked in *KenAmerican's mine*" and the "genesis" of the complaint was the miner's dismissal by KenAmerican (emphasis added)); *Lone Mountain*, 20 FMSHRC at 930 (holding that the complainant, who was a miner for Arch of Kentucky, "was not a complaining 'miner' for purposes of the Mine Act" and his complaint against Lone Mountain, which arose out of his application for employment with Lone Mountain). The mere fact that Pappas may have been both a miner and an applicant for employment does not establish that he was a miner for purposes of his complaint against CalPortland. *See, e.g.*, *Sec'y of Labor v. Mullins*, 888 F.2d 1448, 1452 (D.C. Cir. 1989) ("The fact that [the operator] also violated § 105(c) at an earlier point in time by interfering with Keene's statutorily protected rights *while he was still a miner* within the meaning of the Act does not insulate [the operator's owner and president] from liability for subsequently interfering with Keene's statutorily protected rights in *his capacity as an applicant for employment*." (emphasis added)).

Applying section 105(c)(2) to the facts of this case, because he had "no prior work history" and "no prior relationship" with CalPortland, *cf. Piper*, 35 FMSHRC at 1973, we conclude that Pappas was an applicant for employment for purposes of his discrimination complaint against CalPortland. Although Pappas was obviously a "miner" in that he was employed by Martin Marietta at the Oro Grande plant, both CalPortland and the Secretary agree that Pappas applied for a new position at CalPortland and the alleged discriminatory act was CalPortland's failure to hire him. The literal fact that Pappas had been employed as a miner for a different employer at the Oro Grande plant does not distinguish him from any other "applicant for employment" with CalPortland for purposes of section 105(c)(2). Therefore, Pappas was an "applicant for employment" and was not eligible for temporary reinstatement.

\* \* \*

For the reasons stated, "regular interpretive method leaves no serious question" as to congressional intent in this case. *Gen. Dynamics*, 540 U.S. at 600. The text and structure of section 105(c)(2) of the Mine Act preclude the Commission from directing an owner or operator to temporarily "reinstate" a complainant who has never been employed by that owner or operator. Because Pappas was an "applicant for employment" who was not eligible for temporary reinstatement pending final order on his complaint, we grant CalPortland's petition for review and vacate the Commission's decision and order.

*So ordered.*