# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 4, 2017                    Decided July 21, 2017

No. 16-1250

MICHAEL WILSON,
PETITIONER

v.

FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,
ET AL.,
RESPONDENTS

———

On Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission

———

*Tony Oppegard* argued the cause for petitioner. With him on the briefs were *Wes Addington* and *Evan B. Smith*.

*Donna M. Faraq*, Student Counsel, argued the cause for respondent Jim Browning. With her on the brief were *Erica J. Hashimoto*, Director, and *Luke Sullivan*, Student Counsel.

Before: ROGERS, MILLETT and PILLARD, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

Concurring opinion by *Circuit Judge* MILLETT.

ROGERS, Circuit Judge: The question presented by the petition is whether the Federal Mine Safety and Health Review Commission, upon declining to review a decision of an Administrative Law Judge, *see* 30 U.S.C. § 823(d)(1), erred in rejecting Michael Wilson's complaint of unlawful "interference" with his rights as a miners' representative under the Federal Mine Safety and Health Amendments Act of 1977 ("the Mine Act"), 30 U.S.C. § 815(c)(1). Wilson's challenge arises in the context of a Section 105(c) "interference" allegation by a non-employee representative of miners against a non-management employee. *See* 30 U.S.C. § 815(c). He contends that the Administrative Law Judge erred as a matter of law in assessing whether "interference" occurred and in applying the Commission's summary decision standard. For the following reasons, we deny the petition.

## I.

Congress adopted the Mine Act "to protect the health and safety of the Nation's . . . miners." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 202 (1994) (quoting 30 U.S.C. § 801(g)). The Mine Act charges two separate agencies — the Secretary of Labor and the Federal Mine Safety and Health Review Commission — with "complementary policymaking and adjudicative functions." *Prairie State Generating Co. v. Sec'y of Labor*, 792 F.3d 82, 85 (D.C. Cir. 2015). The Secretary, acting through the Department of Labor Mine Safety and Health Administration ("MSHA"), has rulemaking, inspection, and enforcement authority, and the Secretary's reasonable interpretation of the Mine Act is "accorded deference by both the Commission and this Court." *CalPortland Co. v. Fed. Mine Safety & Health Review Comm'n*, 839 F.3d 1153, 1162 (D.C. Cir. 2016). The Commission is an adjudicatory body "independent of the Secretary." *Prairie State*, 791 F.3d at 85–86 (citing 30 U.S.C. §§ 815(d), 823).

Section 105(c)(1) of the Mine Act provides that "[n]o person shall . . . interfere with the exercise of the statutory rights of any miner [or] representative of miners . . . because of the exercise by such miner [or] representative . . . of any statutory right afforded by [the Mine Act]." 30 U.S.C. § 815(c)(1). Miners' representatives have the statutory right of access to the company's records for purposes of examining whether hazardous conditions exist or violations of mandatory health and safety standards have occurred. *See* 30 U.S.C. §§ 813(h), 863(d)(1), (e), (f); 30 C.F.R. §§ 75.360(b), (h), 75.363(b), (d). The Secretary has concluded that "interference" occurs when:

> 1. A person's action can be reasonably viewed, from the perspective of members of the protected class and under the totality of the circumstances, as tending to interfere with the exercise of protected rights, and

> 2. The person fails to justify the action with a legitimate and substantial reason whose importance outweighs the harm caused to the exercise of protected rights.

*McGary v. Marshall Cnty. Coal Co.*, 38 FMSHRC 2006, 2011 (Aug. 26, 2016); *see also Franks v. Emerald Coal Res., LP*, 36 FMSHRC 2088, 2108 (Aug. 29, 2014) (Chairman Jordan and Comm'r Nakamura, separate op.) (citing Sec'y Amicus Br. at 10). The Commission has not settled upon a test for interference. *See McGary*, 38 FMSHRC at 2012 n.11; *id.* at 2028 n.22 (Chairman Jordan and Comm'r Cohen, concurring in part and dissenting in part). In Wilson's case, the Administrative Law Judge ("ALJ") applied the Secretary's test, *Wilson v. Browning*, 38 FMSHRC 1161, 1163 (May 18, 2016) ("Dec."), and neither party has challenged that test. *See* Pet'r's Br. 27–29; Resp't's Br. 15 n.6.

Michael Wilson is a former employee of Parkway Mine, which is located in Muhlenberg County, Kentucky and operated by Armstrong Coal Company. In February 2014, Wilson began to serve as a representative of miners. Upon his retirement in May 2015, he continued to serve as a miners' representative. In a discrimination complaint filed with MSHA, Wilson claimed that on June 13, 2015, Jim Browning, who worked as a miner for Armstrong Coal at the underground Parkway Mine, violated Section 105(c) by interfering with his statutory right as a miners' representative to inspect the mine's examination books. Wilson requested that Browning be fined, required to undergo training, and ordered to cease and desist from future violations of the Mine Act. The Secretary, through MSHA, declined to file a complaint on Wilson's behalf, and Wilson sued Browning "in his own behalf before the Commission." 30 U.S.C. § 815(c)(3).

According to Wilson's complaint, there was a history of hostility by Armstrong management and some miners toward miners' representatives because of their protected activities and status as representatives of miners. Compl. ¶ 7. On June 13, 2015, Wilson was at the mine in a bath house reviewing the company's preshift/onshift examination reports when Browning walked up behind him, leaned over him, and "accused [him] of looking at the preshift/onshift book in order to find a violation and to have a citation issued against the company." Compl. ¶¶ 8, 9. Browning told Wilson that he "was taking money out of his (Browning's) pocket," and repeatedly told Wilson to go home, stating that other miners' representatives at the mine could perform inspections. *Id.* ¶ 9. Wilson told Browning it was his right as a miners' representative to look at the reports and he was not leaving. *Id.* "[A] few minutes" later, the mine superintendent intervened and escorted Browning out of the bath house. *Id.* ¶ 10. Wilson submitted an affidavit from Justin Greenwell, another miners' representative, who witnessed "the

entire event" and stated that Browning "told [Wilson] that he had a 'personal vendetta against the company,' [and] told [Wilson] numerous times, in a loud voice, to 'go home.'" Greenwell Affid. at 1 (Mar. 23, 2016).  Browning, an hourly worker at the mine, in turn, acknowledged that he had been suspended for the remainder of the day, lost a day's pay, and had been told by the mine supervisor not to question Wilson in the future.  *See* Resp't Browning's Answers to Complainant's 1st Set of Interrogs. Question No. 2; Resp't's Resp. to Compl. of Discrimination ¶ 2.

The parties filed cross motions for a summary decision, *see* FMSHRC Rule 67, 29 C.F.R. § 2700.67(b), with Browning arguing that his actions did not fall within the scope of Section 105(c) and that what he was alleged to have said to Wilson was speech protected by the First Amendment to the Constitution. An ALJ granted Browning's motion and denied Wilson's.  The ALJ concluded that although Browning "express[ed] [his] opinion in an agitated manner that Wilson may have perceived as threatening," Dec. at 1165, the record did not support an interference claim against Browning, *id.*

The ALJ looked to "interference" factors on which the Commission has relied:  the positions of the parties; the tone and setting of the encounter; the duration of the conduct; and whether the subject was brought up repeatedly.  *See id.* at 1166 (citing *Gray v. N. Star Mining, Inc.*, 27 FMSHRC 1, 11 (Jan. 12, 2005), and *Multi-Ad Servs., Inc. v. NLRB*, 255 F.3d 363, 372 (7th Cir. 2001)).  The ALJ first concluded that because "Wilson was not an employee at the mine and Browning had no authority over him, [] Browning's actions should be understood as having less coercive effect than in comparable cases like *Gray* where the [challenged] actions were done by a supervisor."  *Id.* at 1166. The ALJ next concluded that although "Browning took an aggressive tone with Wilson that could have been interpreted as

intimidating," its "effect was mitigated slightly by the fact that the encounter took place in the bathhouse in front of several witnesses." *Id.* "Finally," the ALJ concluded that "the encounter between Wilson and Browning was an isolated incident" and that "Browning was suspended as a result of his conduct, and so was unlikely to disturb Wilson again." *Id.* The ALJ noted Wilson had not alleged that any similar incidents involving Browning had occurred since June 13th, and it "is unlikely that Wilson views Browning as an ongoing threat that would dissuade him from working as a miners' representative." *Id.*

The ALJ then supplemented this analysis, stating that "[i]n addition to these factors, it is worth noting that the incident does not appear to have had an actual effect on Wilson's exercise of his rights as a miners' representative." *Id.* The ALJ viewed Wilson's persistence in examining the company's books notwithstanding Browning's words and conduct, as "persuasive evidence that a reasonable miner would not have been dissuaded from exercising his rights in this situation." *Id.* at 1167.

Wilson petitioned for review by the Commission. When the Commission declined review, the ALJ's decision became the final decision of the Commission pursuant to 30 U.S.C. § 823(d)(1). Wilson petitions for review by the court. *Id.* § 816(a)(1).

## II.

Wilson contends that the ALJ erred in applying several factors relevant to the Secretary's test for when statutory interference under Section 105(c) occurs. He begins by asserting that the ALJ failed to "heed the bedrock principle that § 105(c) of the Mine Act must be liberally construed to effectuate the safety-enhancing purpose of the law." Pet'r's Br. 15. From

there, he challenges the ALJ's application of several factors as well as the ALJ's interpretation of relevant precedent, and he contends more generally that the ALJ misapplied the summary decision standard by failing to view the facts in the light most favorable to him. Additionally, Wilson maintains that he was entitled to a summary decision in view of Browning's admissions to a MSHA special investigator that he sought to discourage Wilson from examining the company's inspection books because additional company citations might adversely affect Browning's personal finances. *Id.* at 14 n.12, 15–16.

The court reviews *de novo* the Commission's legal conclusions in applying the "interference" factors identified in the Commission's precedent. *See Am. Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 796 F.3d 18, 23 (D.C. Cir. 2015); *see also Prairie State*, 792 F.3d at 89. The Commission's summary decision rule is modeled on Federal Rule of Civil Procedure 56. *See Sec'y of Labor v. Hanson Aggregates N.Y., Inc.*, 29 FMSHRC 4, 9 (Jan. 17, 2007).

The Commission has instructed that "rather than considering only [the respondent's] intent, the [ALJ] should . . . analyze[] the totality of circumstances surrounding [the] statements" to determine whether a violation of Section 105(c) occurred. *Gray*, 27 FMSHRC at 10. That is what the ALJ did. Looking to the *Multi-Ad* factors, which reflect those relied upon by the Commission in *Gray*, 27 FMSHRC at 10–11, and viewing the allegations and record in the light most favorable to Wilson, the ALJ concluded that Browning's conduct did not tend to interfere with the exercise of protected rights by a reasonable miners' representative. *See* Dec. at 1165. Wilson challenges the ALJ's application of various factors, and with one exception his challenges are unpersuasive.

First, Wilson maintains that the ALJ did not take "into account that [] this was an isolated incident [] precisely because Wilson took legal action against Browning . . . and/or he was suspended by Armstrong Coal for his conduct." Pet'r's Br. 20–21. In Wilson's view, the evidence showed that Browning intended his actions to have a greater effect than they actually did, and so the ALJ erred in not fully addressing those intentions in the analysis. But as the Commission has instructed, whether "interference" occurred does not turn "on the [respondent's] motive or on whether the coercion succeeded or failed." *Gray*, 27 FMSHRC at 9 (quotation omitted). That Browning may have intended, absent his employer's intervention, to continue to accost Wilson ignores that the Secretary's test calls for an objective evaluation of how a reasonable miners' representative would view Browning's conduct, and not whether Browning had a subjective intention to interfere with Wilson's statutory rights. *See, e.g.*, *McGary*, 38 FMSHRC at 2011. Under the totality of the circumstances, the ALJ viewed Browning's intentions in context, *see Gray*, 27 FMSHRC at 9–11, and did not err in considering that, perhaps due to factors beyond Browning's control, the encounter lasted only a few minutes. Dec. at 1166. Similarly, the ALJ did not err in considering that Browning was "unlikely to disturb Wilson again" given Browning's discipline and subsequent suspension. *Id.* And, to the extent Wilson suggests that Browning's admissions to an MSHA special investigator demonstrate unlawful interference, Pet'r's Br. 29–30, he misinterprets Commission precedent by placing undue emphasis on Browning's intent.

Second, Wilson maintains that the ALJ erred in considering Browning's status as an hourly employee, as opposed to a manager, because even a manager could not have taken the usual disciplinary and punitive employment actions against a "*non-employee* representative of miners," such as Wilson. Petr's' Br. 21 (emphasis in original). That alone does not render

Browning's position as an hourly employee irrelevant. In the context of "interference," the Commission typically considers the "nature of [the parties'] relationship" and whether the respondent holds a "supervisory position." *Gray*, 27 FMSHRC at 10–11; *see also Franks v. Emerald Coal Res.*, *LP*, 36 FMSHRC 2088, 2115 (Aug. 29, 2014) (Chairman Jordan and Comm'r Nakamura, separate op.). As an hourly employee, Browning had no authority over mine operations or premises, the miners whom Wilson represented, or the company's reports that Wilson was inspecting, and he was subject to being quickly escorted out of the mine and disciplined, thereby weakening the force of his potentially intimidating conduct.

Third, Wilson objects to the ALJ considering the public setting of the incident as a "mitigating factor." Pet'r's Br. 21–22. As noted, the ALJ concluded that the effect of Browning's aggressive tone was "mitigated slightly by the fact that the encounter took place in the bathhouse in front of several witnesses." Dec. at 1166. Under the totality of the circumstances, the Commission has observed that a public interaction with witnesses at the mine could be less intimidating than one that occurs in private, for example, through "an at-home telephone call [or] a meeting outside the mine office." *Gray*, 27 FMSHRC at 11. Here, that was true because the public nature of the incident enabled another employee, who was also a miners' representative, to report the altercation and prompt the mine supervisor to intervene.

Fourth, Wilson correctly points out, however, that the ALJ erred as a matter of law in considering as a factor that Wilson continued his work as a miners' representative after Browning was taken away by his supervisor and suspended for the rest of the work day. *See* Pet'r's Br. 23–24. The ALJ was under the impression that the actual effect of Browning's conduct could be considered so long as that consideration was not dispositive.

Dec. at 1166–67. But the Secretary's "interference" test is objective, and the Commission has instructed that "the relevant perspective on the issue is that of the reasonable miner [or miners' representative]," not the subjective perspective of the complainant. *McGary*, 38 FMSHRC at 2017 & n.13 (quotation omitted)*; see also Franks*, 36 FMSHRC at 2111, 15–16 (Chairman Jordan and Comm'r Nakamura, separate op.); *Gray*, 27 FMSHRC at 9. This interpretation of "interference" under the Mine Act has its genesis in Section 8(a)(1) of the National Labor Relations Act, *Franks*, 36 FMSHRC at 2107 n.2 (Chairman Jordan and Comm'r Nakamura, separate op.); *Gray*, 27 FMSHRC at 9, and the National Labor Relations Board has ruled that the complainant's "subjective reaction" to an allegedly threatening or coercive statement may not be considered in the Section 8(a)(1) analysis, *Sunnyside Home Care Proj., Inc.*, 308 NLRB 346, 346 n.1 (1992); *see also Hanes Hosiery, Inc.*, 219 NLRB 338, 338 (1975). Like the Board, the Commission applies an objective standard, and the ALJ here offered no persuasive reason for departing from that understanding of the interference test.

Typically, a court cannot affirm an agency decision on a ground other than those relied upon by the agency. *See, e.g., SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943). An exception exists when "there is not the slightest uncertainty as to the outcome of a proceeding on remand," and in that circumstance a court "can affirm an agency decision on grounds other than those provided in the agency decision." *Grossmont Hosp. Corp. v. Burwell*, 797 F.3d 1079, 1086 (D.C. Cir. 2015) (quoting *Manin v. NTSB*, 627 F.3d 1239, 1243 n.1 (D.C. Cir. 2011)). Importantly, the actual effects of a respondent's alleged misconduct is not a *Multi-Ad* factor. *See Multi-Ad Servs.*, 255 F.3d at 372; *Franks*, 36 FMSHRC at 2115 (Chairman Jordan and Comm'r Nakamura, separate op.); Dec. at 1165. Here, the ALJ applied the *Multi-Ad* factors and on that basis alone determined

that the record did not "support[] an interference claim against Browning." Dec. at 1165. After weighing the *Multi-Ad* factors to conclude that no interference occurred, the ALJ erroneously considered Wilson's actual response — but did so only to reinforce that earlier conclusion. *See id.* at 1166–67. Consequently, were the court to remand the case for further proceedings, there is not the "slightest uncertainty" that after omitting consideration of the actual effects of Browning's conduct on the performance of Wilson's inspection work, the ALJ would redo the same *Multi-Ad* analysis and once again conclude that Browning did not interfere with the exercise of Wilson's rights.

Wilson's remaining challenges to the ALJ's decision are unavailing. Fifth, he challenges the ALJ's understanding of precedent, focusing on *Pendley v. Highland Mining Co.*, 37 FMSHRC 301 (ALJ Feb. 12, 2015). Wilson views this case to hold that a non-supervisory miner violates Section 105(c) by "stand[ing] too close to [the complainant], in an intimidating manner, for 15–40 and 30–60 seconds, (i.e., a shorter period of time than Browning hovered over Wilson while yelling at him)." Pet'r's Br. 26 n.24. But in *Pendley*, the ALJ did "not find that [the respondent's] conduct alone constituted interference." *Pendley*, 37 FMSHRC at 315. Rather, the "acts or omissions by mine management," combined with the miner's conduct, constituted interference. *Id.* The context was different as well. In *Pendley,* the parties had engaged in a "multi-year feud, which resulted in numerous judicial decisions and [the complainant's] termination," *id.* at 312, with "[a]llegations of discrimination and conflicts . . . go[ing] as far back as 2005" and including a "physical altercation," *id.* at 312–13. Here the record shows only a single, "isolated incident" between Wilson and Browning, Dec. at 1166, even though the two had worked together at the mine for years. Wilson has not alleged or proffered evidence of a prior incident, and he does not maintain that management bears any

12

responsibility for Browning's conduct.

Nor is there any merit to Wilson's sixth challenge that the ALJ misapplied the summary decision standard by characterizing the incident as an "altercation" rather than viewing the evidence in the light most favorable to him. Pet'r's Br. 22 n.20. In ruling on the cross-motions for summary decision, the ALJ assumed as true Wilson's description of the incident, namely that Browning "walked up behind Wilson" and began to yell "angrily" in an "agitated manner that Wilson may have perceived as threatening." Dec. at 1165. Wholly consistent with Wilson's account, as opposed to Browning's account, *see, e.g.*, Resp. to Complainant's Summary J. Mot. at 7; Browning Affid. at 1–2 (Apr. 29, 2016), the ALJ described a scene where Browning is the sole aggressor in a verbal incident in a public place, followed by prompt supervisory intervention, leading to Browning's suspension and docking of his pay. Wilson concedes that there have been no similar events since the single, brief incident in June 2015, Pet'r's Br. 20–21, and the record offers no basis to conclude Browning would risk further suspension and loss of pay by repeating his aggressive behavior towards Wilson. Indeed, Browning's own statements suggest to the contrary. *See, e.g.*, Browning Affid. at 2; MSHA Special Investigator's Interview of Browning, Tr. 15–16 (July 13, 2015). Under the totality of circumstances, upon applying the Secretary's test and viewing the evidence in the light most favorable to Wilson, the ALJ properly applied the summary decision standard in concluding that Browning's conduct did not rise to the level of Section 105(c) interference.

Finally, because the court is affirming the decision that, under the Secretary's test, Browning's conduct did not constitute Section 105(c) interference, the court has no occasion to reach Browning's contention that the Mine Act does not provide for a private right of action against non-management miners. *See*

Resp't's Br. 26–38 (citing *inter alia*, *Meredith v. Fed. Mine Safety & Health Review Comm'n*, 177 F.3d 1042 (D.C. Cir. 1999)). Similarly, the court has no occasion to consider Browning's alternative defense that "the First Amendment precludes [] finding" him liable under the Mine Act. *See* Resp't Br. 38.

Accordingly, we deny the petition for review.

MILLETT, *Circuit Judge*, concurring:

I join the opinion for the court as far as it goes. I write separately only to note that, in my view, constitutional avoidance concerns contribute measurably to my conclusion that "there is not the slightest uncertainty as to the outcome of [the] proceeding on remand," *Manin v. National Trans. Safety Bd.*, 627 F.3d 1239, 1243 n.1 (D.C. Cir. 2011) (internal quotation marks and citation omitted).

This case involves statements made by a miner to a miners' representative. In the analogous context of labor law, statements made regarding unionization or union activity are protected as long as they do not include a threat of reprisal or force or a promise of benefit. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 616–617 (1968); *US Airways, Inc. v. National Mediation Bd.*, 177 F.3d 985, 991–994 (D.C. Cir. 1999); 29 U.S.C. § 158(c).

Statements made by a miner to a miners' representative very likely merit similar constitutional protection in the narrow circumstances presented here. Wilson has not alleged that Browning's statements contained any actual or implied threat (or promise). And Browning is an hourly employee with no authority to affect Wilson's or any other employee's work as a representative, or access to the mine, miners, or mine records. Nor does Wilson allege that Browning's outburst was made on behalf of or was encouraged by management or union officials. *Cf. Gissel Packing*, 395 U.S. at 617 (analysis of speech's protected content must "take into account the economic dependency of the employees on their employers" and the consequent tendency of employees "to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear"). Browning was just a miner acting entirely on his own initiative and with no power other than the power of persuasion. And all he did was forcefully express to Wilson, a miners' representative, his personal

opinion that Wilson was not responsibly fulfilling his representative role.

The substantial constitutional concerns associated with an attempt to punish such conduct, combined with the other factors identified in the court's opinion, convince me that nothing could change on remand.